SHIRLEY COOPER *et al.*, Plaintiffs-Appellees, v. THE DEPARTMENT OF
CHILDREN AND FAMILY SERVICES, Defendant-Appellant.

Fourth District   No. 4—92—0046

Opinion filed September 3, 1992.—Rehearing denied October 6, 1992.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of Chicago, of counsel), for appellant.

Carl R. Draper and Charles S. Watson, both of Feldman & Wasser, of Springfield, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

Following a public hearing, defendant Illinois Department of Children and Family Services (DCFS) concluded the license of plaintiffs Shirley and William Cooper (Coopers) to operate a day-care center should be revoked because they "constantly, steadily, repeatedly, and continually violated the Department's licensing standards." The Coopers appealed that conclusion and, upon administrative review, the circuit court reversed, finding (1) DCFS lost jurisdiction over the Coopers' hearing regarding the revocation of their center's license because it failed to set the hearing within the statutorily prescribed time; (2) DCFS failed to follow its own regulations, thereby denying the Coopers due process; and (3) DCFS's final administrative decision was against the manifest weight of the evidence. DCFS appeals, contending: (1) section 9(a) of the Child Care Act of 1969 (Act) (Ill. Rev. Stat. 1989, ch. 23, par. 2219(a)), which requires that a day-care license revocation hearing be held within 30 days of the date of the postmark of the notice of hearing, is directory; (2) DCFS did not violate its own regulations regarding complaints and investigations into violations of day-care licensing standards; (3) the Coopers were not denied due process of law by its alleged failure to follow its own regulations; (4) sec-

tion 13 of the Illinois Administrative Procedure Act (Administrative Procedure Act) (Ill. Rev. Stat. 1989, ch. 127, par. 1013) does not require the proposed decision be served upon the Coopers, thereby allowing them an opportunity to object and respond to that decision; and (5) the decision to revoke the Coopers' license to operate a day-care center was not against the manifest weight of the evidence. We reverse.

The Coopers own and operate the Little Moppet Day Care Center in Springfield, Illinois. The Coopers applied for a license to operate the day-care center in July 1987 and they operated Little Moppet under a permit issued by DCFS between the date of the application and the effective date of their license. On January 26, 1988, DCFS received an anonymous complaint regarding Little Moppet. The following day, a DCFS licensing representative made an unannounced monitoring visit to Little Moppet and found several licensing violations including inadequate lunches, improper mixing of children of different ages, cleaning supplies accessible by the children, and a child being left unattended. DCFS sent Mrs. Cooper a follow-up letter detailing the results of this visit, as well as of another such visit conducted on February 8, 1988, when similar violations were found. After a meeting between DCFS and the Coopers, DCFS sent the Coopers a letter dated February 26, 1988, stating that the violations cited on January 27, 1988, and February 8, 1988, had been corrected and the Coopers were now in compliance with the licensing standards.

On July 6, 1988, a DCFS licensing representative made an unannounced monitoring visit to Little Moppet. Several licensing violations were noted, including improper staff/child ratios, children being left unattended, uncovered electrical outlets, scissors left within reach of the children and an inadequate supply of toys. These violations were reported to Mrs. Cooper through a letter dated July 18, 1988. These violations were corrected and DCFS subsequently issued the Coopers a license to operate Little Moppet.

On December 5, 1988, and January 20, 1989, a licensing representative made unannounced monitoring visits to Little Moppet. Again, similar violations regarding the staff/child ratios and improper mixing of children of different ages were found. After each visit, a follow-up letter detailing these violations was sent to Mrs. Cooper. Both letters expressed DCFS's concern about the numerous violations and continuing noncompliance with the licensing standards.

DCFS received an anonymous complaint from a parent regarding Little Moppet on December 1, 1989. This complaint noted there was only one staff member watching 10 infants and only two staff mem-

bers for approximately 30 to 40 children. The complaint described the atmosphere as "chaotic." A licensing representative visited Little Moppet that day and noted children were left unattended as well as staff/children ratio violations. On December 28, 1989, a follow-up letter was sent to Mrs. Cooper regarding these violations. This letter informed Mrs. Cooper that because of the violations found, the anonymous complaint was substantiated. This letter also informed the Coopers that DCFS would be making future monitoring visits to confirm compliance with the licensing standards.

Additional monitoring visits were made on December 6, 1989, January 26, 1990, and March 20, 1990; on each occasion, violations of the staff/child ratio requirements were found. However, Little Moppet was found to be in compliance with the standards on visits on February 2, 1990, February 20, 1990, and March 9, 1990.

On May 21, 1990, DCFS sent the Coopers a letter indicating its intent to revoke their license to operate Little Moppet. The letter indicated this decision was based on a recent licensing investigation and a determination that the Coopers had failed to maintain the minimum licensing standards prescribed by DCFS.

Between the date of the letter of intent to revoke the license and the date of the public hearing, DCFS made approximately 13 more monitoring visits to Little Moppet. Little Moppet was found to be in compliance on July 6, 1990, and July 11, 1990.

Howard Powell, the last licensing representative for Little Moppet, made the majority of the visits during this time period. Powell made visits on the following days with these findings:

(1) September 20, 1990: two uncovered electrical outlets next to the crib; nine toddlers being supervised by one worker.

(2) October 1, 1990: unanchored swingset on playground; 12 three- to five-year-old children in a room with capacity for 10; nine infants and toddlers in a room with capacity for five.

(3) October 9, 1990: no director or director qualified person on the premises; 10 infants and 1 toddler being supervised by one staff member; uncovered electrical outlets.

(4) October 15, 1990: no qualified director in charge; uncovered electrical outlet.

(5) October 29, 1990: five toddlers and one infant being cared for by one staff member; children out of visual range of staff; incomplete medical records; no drinks served with lunch meal; unmarked cribs and cots; failure to clean diaper area between diaper changes; unanchored swingset on playground; cot not

sanitized after child urinated on it; improper mixing of children of different ages.

(6) November 7, 1990: six toddlers being supervised by one teacher; one high chair with a hole in it; unlabeled milk bottles in refrigerator; weekly menus not posted.

(7) November 13, 1990: workers not signed off on log after giving children medication; 11 children in three- to four-year-old age group being cared for by only one worker.

Marilyn Thornhill, the licensing supervisor for the Springfield licensing team, along with another licensing representative, visited Little Moppet on December 7, 1990. Certain violations were noted, including improper lighting, laundry detergent and fabric softener accessible to children, an unlocked medicine box, unlabeled and open food in the refrigerator, and remodeling being done without notice to DCFS. On December 28, 1990, a licensing representative visited Little Moppet and documented certain violations, including improper mixing of children of different ages, improper staff/child ratios and inadequate lighting.

Finally, after the Coopers contacted Senator John Davidson and Jess McDonald, the Director of DCFS, regarding what they considered to be harassment of them by DCFS, an independent assessment of Little Moppet was ordered by the DCFS central office. This independent assessment was conducted on December 11, 1990, by Beverly Howie, license administrator for DCFS of the Marion region, and Cynthia Yusko, a licensing representative from that region. They visited Little Moppet and found it to be not in compliance in critical areas related to the care and protection of children. These areas included staff qualifications, the child/staff ratio and group size. This investigation also revealed incomplete medical files on the children with regard to consent forms and appropriate enrollment forms.

On May 21, 1990, DCFS notified the Coopers of its intent to revoke their license to operate Little Moppet. The Coopers were informed they had 10 days to request a public hearing as well as to request a written statement of the charges which formed the basis of the action. The Coopers responded on May 29, 1990, requesting a public hearing and written statement of the charges against them. The Coopers were then informed by DCFS that they would be notified regarding the date of the hearing. On November 15, 1990, the Coopers were contacted by hearing officer Matthew E. Franklin, who told them that the date for the public hearing would be January 8, 1991. The Coopers were informed of their rights, the various proce-

dures for the hearing, and they received a written statement of the charges concerning the alleged licensing violations on this date.

On January 8, 1991, the public hearing was held. Each of the licensing representatives that had made visits to Little Moppet during the past three years testified as to what he or she had witnessed. At the hearing, Robert Harris, the DCFS licensing administrator for the Springfield region, testified that following the monitoring visits in August 1988, April 1989, and January 1990, informal licensing review sessions were held with the Coopers. At each of these informal reviews, the Coopers were notified about the various recurring problems at Little Moppet especially with regard to the child/staff ratios and the improper mixing of children of different age groups.

Mrs. Cooper appeared *pro se* at the hearing. She testified that she perceived most of the problems with the licensing standards were due to different interpretations of the rules by the various licensing representatives. She characterized the facility as a clean, nice place and believed that anybody that came in would be willing to put his or her children in her day-care center. She testified that she would try to abide by the rules as best as she could. Finally, Mrs. Cooper testified that she did not believe any of the violations listed were severe enough to revoke her license. She felt her day-care center was very safe and the staff was very friendly and very conscientious about the children.

On May 1, 1991, the Director of DCFS issued her decision revoking the Coopers' license. The Director indicated she had reviewed the recommendation of the hearing officer based on the testimony, evidence presented and the facts of the case, as he had determined from the public hearing. The hearing officer recommended the revocation of the license and the Director agreed. The Coopers were thus notified that their license was revoked and informed of their right to seek judicial review within 35 days of the final administrative decision.

On May 14, 1991, the Coopers filed a complaint for administrative review in the circuit court. A hearing was held before the circuit court on October 1, 1991. On October 22, 1991, the court entered an order finding that DCFS's order revoking the Coopers' license was void since DCFS had failed to follow the mandatory provisions of section 9(a) of the Act regarding the time for holding a hearing and serving the statement of charges upon the licensee. The circuit court also found DCFS failed to follow certain of its regulations contained within the Illinois Administrative Code, violated the Coopers' due process rights during the investigation in 1990 and at the subsequent hearing to revoke the license, and that its decision to revoke the

Coopers' license was against the manifest weight of the evidence. After its motion to reconsider was denied, DCFS filed its notice of appeal on January 13, 1992.

DCFS first contends the circuit court erred in concluding it lost jurisdiction over the hearing by failing to hold it within 30 days of the date of the postmark on the notice of hearing. DCFS suggests the provision of section 9(a) of the Act regarding the 30-day requirement in which a hearing on a license revocation must be held is directory rather than mandatory, and thus the failure to comply with this requirement did not cause it to lose jurisdiction over the revocation proceeding.

Section 9(a) of the Act provides:

"Upon written request by the licensee, the Department shall furnish such written statement of charges, and, at the same time, shall set the date and place for the hearing. The charges and notice of the hearing shall be delivered by registered mail with postage prepaid, and the hearing must be held within 30 days, dating from the date of the postmark of the registered mail, except that notification must be made at least 15 days in advance of the date set for the hearing." Ill. Rev. Stat. 1989, ch. 23, par. 2219(a).

The date of the postmark on the notice of hearing is not apparent from this record. However, the parties have agreed, for purposes of argument, that the postmark was dated the same day as the notice, November 15, 1990. Thus, as the hearing was held on January 8, 1991, the hearing was not held within 30 days of the postmark of the notice of hearing. The question then becomes whether subsection (a) of section 9 of the Act is mandatory, thus leaving DCFS without jurisdiction to conduct the hearing, or merely directory.

■ There is no universal formula for distinguishing between mandatory and directory provisions. Rather, whether a particular statutory provision is mandatory or directory depends upon the intent of the legislature, which is ascertained by examining the nature and object of the statute and the consequences which would result from any given construction. (*Pullen v. Mulligan* (1990), 138 Ill. 2d 21, 46, 561 N.E.2d 585, 595.) A mandatory provision in a statute is one which the omission to follow renders the proceeding to which it relates illegal and void, while a directory provision is the one the observance of which is not necessary to the validity of the proceeding. (*Shipley v. Stephenson County Electoral Board* (1985), 130 Ill. App. 3d 900, 902, 474 N.E.2d 905, 907.) Proper interpretation of the provision cannot simply be based on its language, but it must be grounded on the

nature, objects, and the consequences which would result from construing it one way or another. *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 21, 373 N.E.2d 1332, 1335.

Ordinarily a statute which specifies the time for the performance of an official duty will be considered directory only where the rights of the parties cannot be injuriously affected by failure to act within the time indicated. However, where such statute contains negative words, denying the exercise of the power after the time named, or where a disregard of its provisions would injuriously affect public interests or private rights, it is not directory but mandatory.

> "The general rule announced in *People v. Jennings*, 3 Ill. 2d 125, 127, is applicable here: 'There are, undoubtedly, many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such, generally, are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of the parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated.' " *Carrigan v. Illinois Liquor Control Comm'n* (1960), 19 Ill. 2d 230, 233-34, 166 N.E.2d 574, 576.

Where, as here, a statute does not provide sanctions for failure to comply with the provision in dispute, the requirement in the statute may be interpreted as being merely directory rather than mandatory. (*Peoples Independent Party v. Petroff* (1989), 191 Ill. App. 3d 706, 708, 548 N.E.2d 145, 146.) If a provision of a statute states the time for performance of an official duty without any language denying performance after a specified time, it is directory. However, if the time period is provided to safeguard someone's rights, it is mandatory, and the agency cannot perform its official duty after the time requirement has passed. *Grove School v. Department of Public Health* (1987), 160 Ill. App. 3d 937, 941, 513 N.E.2d 973, 976.

In *Grove School*, plaintiff was a private, not-for-profit school which was licensed and regulated by the Nursing Home Care Reform Act of 1979 (Nursing Home Act) (see Ill. Rev. Stat. 1985, ch. 111½, par. 4151—101 *et seq.*). An incident occurred between a staff member and a resident which resulted in an investigation and conclusion that a violation of the Nursing Home Act had occurred. Plaintiff requested a hearing on the matter pursuant to section 3—704 of the Nursing

Home Act, which stated that upon request, the Department of Public Health "shall commence the hearing within 30 days of the receipt of request for hearing." (See Ill. Rev. Stat. 1985, ch. 111½, par. 4153–704(c).) The hearing was not held within the prescribed time limitation and plaintiff argued on appeal that the administrative decision concluding there was a violation of the Nursing Home Act was void because the hearing was not held within 30 days since the provision requiring such was mandatory.

The court rejected this argument, first noting that there was no negative language denying performance if the time requirement was not met. The court further noted that the rights of the persons whom the statute was intended to protect would not be adversely affected by the delay. The court stated the purpose of the Nursing Home Act was to protect nursing home residents from abuse and that these people's rights would be more adversely affected if defendant was unable to address charges of abuse because of a mandatory interpretation of the statute which would require dismissal of the proceeding. Thus, defendant did not lose jurisdiction over the hearing as the statute was given a directory interpretation. *Grove School,* 160 Ill. App. 3d at 941, 513 N.E.2d at 977.

█ Although different acts are involved and the statute in *Grove School* used the word "shall," we find the rationale used there persuasive. The Act provides the requirements and standards for the licensing and operation of day-care centers. We believe a purpose of the Act is to protect the children placed in day-care centers by a strict regulation of those facilities. Here, by allowing a mandatory interpretation of this provision, thereby depriving DCFS of jurisdiction over the hearing regarding the revocation of the license, the persons whom the statute was intended to protect, children, will be adversely affected. A delay in the revocation proceedings would mean a continued operation of the day-care center by the licensee, which could place the children in potential danger. Moreover, there is no negative language in the statute denying performance by DCFS for failure to comply with the statute. It appears that this provision is one that merely directs a manner of conduct for the guidance of the officials and specifies the time for performance of an official duty. Thus, since there is no negative language denying performance, and the persons the statute was intended to protect could be placed in danger by a mandatory interpretation, we hold this provision is directory. Thus, DCFS did not lose jurisdiction when it failed to hold the hearing within 30 days of the postmark of notice of the hearing.

DCFS next contends that the circuit court erred in finding that it violated the provisions of its own administrative rules. Specifically, the circuit court found DCFS violated sections 383.7(b) and 383.8(a) through (d) of title 89 of the Illinois Administrative Code (Code) (89 Ill. Adm. Code §§383.7(b), 383.8(a) through (d) (1985)). These violations were said to have occurred between June 8, 1990, and December 7, 1990.

Section 383.7(b) of title 89 of the Code provides that for all complaints, other than those alleging abuse or neglect to the children, alleging licensing standards violations, DCFS is required to commence an investigation within two business days of receipt of the complaint. A "complaint" is defined as any report to DCFS alleging a violation of the laws and rules relating to licensing of child-care facilities. (See 89 Ill. Adm. Code §383.2 (1985).) An "investigation" is an information gathering and assessment process initiated and conducted by DCFS in order to determine compliance with DCFS rules and Federal and State laws. See 89 Ill. Adm. Code §383.2 (1985).

Section 383.3 of title 89 of the Code provides that in order to determine continued compliance with applicable statutes and rules, a licensed child-care facility shall be visited periodically and authorized representatives of DCFS may visit the facility without notice during its hours of operation. (See 89 Ill. Adm. Code §383.3 (1985).) Sections 383.8(a) through (d) of title 89 of the Code provide the time requirements for investigations and determinations of whether licensing violations have occurred. An investigation is to be completed within 30 calendar days of receipt of the complaint. Within 15 days after completing the investigation, DCFS shall make a formal determination of whether a licensing violation has occurred. Within five calendar days of that determination, a certified letter shall be sent to the licensee summarizing the findings of the investigation. If it is determined that a licensing rule or standard has been violated, this letter shall cite the rules violated, notify the licensee that within 10 days of the postmark date of the letter, he may request an informal review of the decision with the licensing representative, and the letter shall also notify the licensee that failure to correct the violations may result in DCFS seeking to revoke or refusing to renew a license.

The circuit court found that the visits between the date of the letter of intent to revoke the license and the date of the hearing constituted "complaints" as defined in the Code, and thus, for each complaint, an investigation followed by a certified letter detailing the findings of those investigations was required.

■ A plain reading of the regulations makes it clear that only when a "complaint" is filed with DCFS is it required to conduct an investigation and follow up with a certified letter within the prescribed time limitations. Only one "complaint," as defined in the regulations, was ever filed with DCFS. The record on appeal does not contain a copy of the complaint; however, on October 1, 1990, at 10:55 a.m., Howard Powell commenced an investigation into the complaint. Powell's interview notes from October 5, 1990, indicate he had separate telephone conversations with Randy and Lynn Skaggs, who appear to be the complainants. The case notes indicate Powell went to Little Moppet on October 1 to follow through on the complaint DCFS received from the Skaggs. A letter dated October 25, 1990, from DCFS to the Coopers summarizes the results of the investigation at Little Moppet conducted October 1, 1990. This letter specifies the violations observed on that date and explains to the Coopers that they could request an informal hearing regarding the decision that the complaint was substantiated. Finally, the letter indicates that in the future, further monitoring visits would be made at Little Moppet.

Thus, for the only "complaint" filed with DCFS, the requirements of sections 383.8(a) through (d) of title 89 of the Code were satisfied, as all time limitations in those sections were met. The trial court's conclusion that each of the monitoring visits by DCFS required follow-up investigations is without merit. The Code simply does not require that for every monitoring visit authorized by section 383.3 of title 89 of the Code, a follow-up investigation by DCFS be conducted and subsequent determination of any violations be made. It belies common sense to suggest that for every single visit to a day-care center, a formal investigation and formal determination of any violations by DCFS need be made. Thus, DCFS did not violate its own regulations regarding investigations and determinations of whether licensing violations occurred.

DCFS next argues the circuit court erred in finding that the Coopers' due process rights were violated by its failure to comply with the time limitations for holding the hearing and for investigating complaints and making determinations of licensing violations. The circuit court also concluded the Coopers' due process rights were violated by the admission at the hearing of evidence regarding violations found after the letter of intent to revoke was mailed. Initially, DCFS indicates that at no time during the administrative hearing did the Coopers raise a due process argument. Generally, a failure to assert a particular argument during the proceedings before an administrative agency results in waiver of the point, and the argument may not be

considered on appeal. (*Kaufman Grain Co. v. Director of Department of Agriculture* (1988), 179 Ill. App. 3d 1040, 1045, 534 N.E.2d 1259, 1263.) Thus, inasmuch as this argument was not raised earlier, it also cannot be raised in the courts on administrative review.

■ However, even addressing the merits of this argument, the circuit court erred in concluding the Coopers' due process rights were violated by DCFS. In an administrative hearing, due process is satisfied by procedures that conform to the fundamental principles of justice. Procedural due process includes notice of what claims will be presented at the hearing and what consequences will result. (*Aloha, Inc. v. Illinois Liquor Control Comm'n* (1989), 191 Ill. App. 3d 523, 528-29, 548 N.E.2d 116, 120.) Due process before an administrative agency requires that a party have an opportunity to be heard. (*Macoupin County Housing Authority v. Pollution Control Board* (1984), 123 Ill. App. 3d 1092, 1095, 463 N.E.2d 958, 960.) Procedural due process in an administrative proceeding does not require a proceeding in the nature of a judicial proceeding but is satisfied by a form of procedure that is suitable and proper for the nature of determination to be made and conforms to fundamental principles of justice. (*Telcser v. Holzman* (1964), 31 Ill. 2d 332, 339, 201 N.E.2d 370, 373-74.) Due process requires a definite charge, adequate notice and a full, fair and impartial hearing in administrative as well as judicial proceedings. *Giampa v. Illinois Civil Service Comm'n* (1980), 89 Ill. App. 3d 606, 611, 411 N.E.2d 1110, 1114.

Since DCFS did not violate any of its own regulations, the Coopers were not denied due process. There is no evidence to show that they were in any way prejudiced by the delay in the setting of the hearing or by the fact that the hearing was held beyond the 30-day requirement. The Coopers were allowed to remain in business during this time and were given a chance to remedy any violations previously found by DCFS. Moreover, the due process rights of the Coopers were not violated at the hearing. They were provided with a written statement of the charges and notified of the fact that they could have an attorney represent them at the hearing. They did not have an attorney and Mrs. Cooper chose to represent herself. She cross-examined DCFS witnesses, and objected at appropriate times, as well as making a statement in her own behalf.

The circuit court concluded that the evidence of licensing violations that occurred after the notice of intent to revoke was improperly admitted. However, nothing in the Act or the Code indicates that this evidence could not be admitted. Section 383.9(i)(1) of title 89 of the Code provides that any evidence having probative value and force

relevant and material to facts in issue shall be admitted. (See 89 Ill. Adm. Code §383.9(i)(1) (1985).) Clearly, evidence of violations after being put on notice is probative and relevant.

Thus, since DCFS did not violate its own regulations and the Coopers were notified of the charges against them, the date of the hearing, and were allowed to present testimony and evidence at the hearing, there was no due process violation.

DCFS next argues the circuit court erred in finding that the Coopers were denied due process by the failure to be served with the Director's final proposal for decision. DCFS alleges it did not have to serve the Coopers with this proposal for decision based on *Donnelly v. Edgar* (1987), 117 Ill. 2d 59, 509 N.E.2d 1015.

Section 13 of the Administrative Procedure Act provides, in pertinent part:

"[W]hen in a contested case a majority of the officials of the agency who are to render the final decision has not heard the case or read the record, the decision, if adverse to a party to the proceeding other than the agency, shall not be made until a proposal for decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and to present a brief and, if the agency so permits, oral argument, to the agency officials who are to render the decision." Ill. Rev. Stat. 1989, ch. 127, par. 1013.

Section 383.9(r)(2) of title 89 of the Code provides that within 30 days of the receipt of the findings of fact, conclusions of law, recommendations to the Director and the report of proceedings, the Director of DCFS shall issue the final administrative decision. (See 89 Ill. Adm. Code §383.9(r)(2) (1985).) On May 1, 1991, DCFS director Sue Suter sent a letter to the Coopers informing them of the final decision to revoke their license. Attached to the letter was the hearing officer's recommendations based on the evidence presented at the hearing. The Director adopted the hearing officer's recommendation to revoke the Coopers' license.

In *Donnelly*, the plaintiff's petition for a restricted driving permit (RDP) (see Ill. Rev. Stat. 1985, ch. 95½, par. 6—205(c)) was denied. Plaintiff appealed, contending the Secretary of State's decision was void because the Secretary of State failed to follow the requirements of section 13 of the Administrative Procedure Act. Plaintiff argued section 13 applied because the final administrative decision was made by the Secretary, who had neither heard the evidence presented at the hearing nor read the record made at the hearing. The Secretary had instead denied plaintiff's petition based on the hearing officer's rec-

ommendation. Plaintiff, on appeal, suggested that because the Secretary made the final decision, he violated section 13 by not providing plaintiff with a copy of the proposed decision and failing to allow him an opportunity to present exceptions to the decision before it became final.

The Secretary argued, and the supreme court agreed, that section 13 did not apply to the case. Specifically, the court stated:

"By its plain language, section 13 applies only to situations where the *majority* of the *officials* of an agency who are to render the final decision have not heard the case or read the record. In the present case, there is only one agency official who is to render the final decision in each case, and that official is the Secretary. Therefore[,] we conclude that section 13 does not control in this case." (Emphasis in original.) (*Donnelly*, 117 Ill. 2d at 66, 509 N.E.2d at 1018.)

The court further noted that its conclusion was logical because to allow every party denied an RDP to file exceptions, submit briefs, and conduct oral arguments before the Secretary would impose too great a burden on the Secretary and would also impose substantial delays on the applicants themselves.

In the present case, the statutory scheme of the Act is similar to that regarding RDP's. The hearing officer heard the evidence and presented his written recommendation to the Director. The Director made the final administrative decision with regard to the revocation of the license, as did the Secretary with respect to the issuance of the RDP. Accordingly, since only one agency official, the Director of DCFS, rendered the final administrative decision, section 13 does not apply. Similarly, the policy concerns present in *Donnelly* also exist with respect to the factual situation presented in this case. To impose the requirements of section 13 on every revocation and renewal proceeding would place an onerous burden on the Director as well as create long days for the licensees.

Thus, based on *Donnelly* and the policy reasons behind that decision, section 13 of the Administrative Procedure Act does not control in the present case. The Coopers were not required to be served with a copy of the proposed decision before the Director made a final decision, and the circuit court erred in concluding the Coopers were denied due process because they were not served with a copy of the proposed decision.

Last, DCFS contends its decision to revoke the Coopers' license was not against the manifest weight of the evidence. On appeal from the judgment of the circuit court in administrative review, the appel-

late court must affirm the agency ruling unless the findings and the decision of the administrative agency are found to be contrary to the manifest weight of the evidence. (*Central Illinois Public Service Co. v. Department of Revenue* (1987), 158 Ill. App. 3d 763, 767, 511 N.E.2d 222, 224-25.) A decision is contrary to the manifest weight of the evidence only when, after viewing the evidence in the light most favorable to the administrative agency, the court determines that no rational trier of fact could have agreed with the agency's decision. *American Federation of State, County & Municipal Employees v. Illinois Educational Labor Relations Board* (1990), 197 Ill. App. 3d 521, 525, 554 N.E.2d 476, 478.

■■ The hearing officer decided to only consider those violations which occurred after August 1990. These included child/staff ratio violations, uncovered electrical outlets, the failure to lock the medicine box, inappropriate age mixing and medical record violations. The hearing officer stated these violations were both of a serious nature and part of a continuing pattern of violations stretching back to the initial issuance of the original permit to operate the day-care center. The hearing officer found that although the Coopers had committed no single violation which standing alone required the license to be terminated, they had constantly, steadily, repeatedly, and continually violated DCFS licensing standards. The evidence presented at the hearing established that the Coopers had in fact continually violated departmental licensing standards. Specifically, the inadequate staffing and the accessibility of medicine and cleaning supplies as well as the uncovered electrical outlets posed great danger to the children. The Coopers presented no evidence at the hearing to refute these licensing standards violations. Thus, we find the DCFS decision to revoke the Coopers' license was not against the manifest weight of the evidence.

In summary, we note the following: first, section 9(a) of the Act requiring the hearing on a license revocation be set within 30 days of the postmark of the date of the notice of hearing is directory, since this provision merely serves as a guide to officials for time limitations to perform their official duties and such an interpretation will protect the persons for whom the statute was designed; second, DCFS did not violate its own regulations regarding complaints and investigations into licensing violations of day-care centers; every monitoring visit performed by a licensing representative does not require a follow-up investigation and formal determination of violations by DCFS; third, the Coopers were not denied due process at any time during these proceedings; fourth, section 13 of the Administrative Procedure

Act does not apply in this case since the final administrative decision is made by only one agency official; finally, the decision of DCFS to revoke the Coopers' license to operate the day-care center was not against the manifest weight of the evidence.

For the foregoing reasons, we reverse the circuit court and reinstate the DCFS decision to revoke the Coopers' license to operate a day-care center.

Reversed; DCFS decision reinstated.

STEIGMANN and COOK, JJ., concur.