1038

THOMAS McELROY, Petitioner-Appellee, v. COOK COUNTY, Respondent-Appellant.

First District (3rd Division)    No. 1—95—1347

Opinion filed June 19, 1996.

GREIMAN, J., dissenting.

Jack O'Malley, State's Attorney, of Chicago (Patricia Shymanski, John J. Murphy, and Gina E. Brock, Assistant State's Attorneys, of counsel), for appellant.

Roma J. Stewart, of Chicago, for appellee.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

Petitioner, Thomas McElroy, sought administrative review in the circuit court of Cook County from an administrative hearing that upheld the discharge of McElroy from employment with respondent, Cook County. The circuit court reversed the hearing officer's decision and ordered that respondent reinstate McElroy with full back pay and benefits. It is from this order that respondent now appeals pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301).

For the reasons which follow, we affirm and remand.

## FACTUAL BACKGROUND

The pertinent facts are as follows. Cook County is a body politic and corporate (55 ILCS 5/2—5002, 2—5009, 3—14001 *et seq.* (West 1996)) which hired McElroy on June 19, 1991. McElroy became an office automation technician for the Cook County bureau of administration's office of management information systems on June 19, 1992. On September 30, 1993, the director of the department of office automation and McElroy's direct supervisor, Mary Jo Horace, scheduled a meeting with McElroy, where she discussed his job performance. Horace addressed three alleged recent incidents: (1) his refusal to move some computer equipment; (2) his 12 tardies during the first half of September; and (3) his incorrect connection of four computer terminals earlier that week. According to Horace, McElroy was unhappy and dissatisfied with his employment. Immediately after the meeting, Horace met with her supervisor and the personnel director and decided that terminating McElroy was "in the county's best interests." Subsequently, McElroy was fired on September 30, 1993, because of his "failure to perform at a satisfactory work level, excessive tardiness and insubordination for tasks assigned."

In December of 1992, eight months prior to his discharge, McElroy contacted Steve Klem of the bureau of human resources to review his employee personnel file. It was on this day that McElroy first saw the memoranda submitted by Horace in his personnel file that had been placed in the file without his knowledge. Shortly thereafter, McElroy sent a letter in January of 1993 to Albert Pritchett, the chief administrative officer of the Cook County bureau of administration, responding to all the memoranda Horace had written about him. The memoranda included: (1) July 15, 1992—general job description; (2) July 15, 1992—McElroy informed Horace of his computer experience; (3) October 23, 1992—regarding Horace's dissatisfaction with McElroy's work performance; (4) October 27, 1992—regarding Horace's dissatisfaction with McElroy's work performance; (5) November 30, 1992—concerning McElroy's lack of proper care of

county equipment; (6) December 1, 1992—regarding McElroy's abuse of telephone privileges; (7) December 8, 1992—McElroy's suspension for refusing to inventory furniture; (8) December 14, 1992—McElroy's personal matters should be taken care of outside the office; and (9) January 15, 1993—concerning McElroy's florist bill being sent to his place of work. Klem had told McElroy that only the supervisor who wrote the memoranda had the authority to remove them. Klem further advised McElroy that if Horace chooses not to remove the memoranda, McElroy can then submit statements that will always appear with the questioned items. Subsequently, McElroy submitted nine responses, with the expectation that they were to be attached to his personnel file to correct the "misinformation and false allegations." Pritchett never responded to McElroy regarding the memoranda or placed McElroy's responses in his personnel file.

McElroy was terminated on September 30, 1993. In October of 1993, nine months after McElroy sent his responses to Klem and Pritchett, McElroy requested to see his file again. Upon reviewing his file, McElroy realized that none of his letters or responses were noted in his employee personnel file. He again contacted Klem to inquire about the incomplete record. Klem informed McElroy that "it is incumbent upon this agency to ascertain the accuracy of documents submitted. The procedure was undertaken and has not been completed at this time. *** The personnel record correction materials may not be part of your file as of this date *** [but] the ready availability of these documents in the Bureau should not result in any impairment of your ability to prepare for any hearing."

Consequently, McElroy requested a hearing before the bureau of human resources to determine whether there was just cause to support his discharge. The hearing was scheduled for November 18, 1993, with Charles Ard as the hearing officer. Horace, McElroy and his counsel, Roma Stewart, were present at the hearing. Horace testified first. She stated that McElroy was fired because of insubordination, tardiness and improperly connecting computer equipment. Horace testified that McElroy had been previously disciplined. Horace acknowledged that she brought only the incomplete department file with her. She did not bring McElroy's official employee personnel file.

McElroy gave his testimony after Horace. He began by stating that his copy of the official personnel file was incomplete. There was no record of: (1) his request for medical leave; (2) certain unidentified progressive disciplinary forms; (3) a memorandum where McElroy was docked for $1^1/_2$ hours of pay; and (4) the nine responses he had submitted to Pritchett and Klem. Since the official personnel file could not be located as Horace had just brought the department file,

McElroy told the hearing officer that they would provide him with copies of all the documents they referred to.

During his testimony, McElroy rebutted the charges against him. First, he stated that his refusal to move some computer equipment was not insubordination. Rather, he was under strict medical orders not to move anything weighing over 21 pounds, since he had recently undergone surgery to repair a severed Achilles tendon. Horace stated that she knew that McElroy had been recovering from surgery, but did not know that he was on restricted duty. Second, although McElroy did not deny his tardiness, he maintained that no documentation existed of his 12 instances of tardiness. Furthermore, McElroy attributed his tardiness to his medical condition, because his leg was stiff when he attempted to move around early in the day. Third, he recalled that he incorrectly connected four computer terminals. McElroy stated that Horace did not answer any of his inquiries regarding the connection, so he did the best he could under the circumstances.

On February 28, 1994, the hearing officer issued his final decision. He summarized all the testimony and considered all the documents, whether they were in the personnel file or not. The hearing officer acknowledged that there were differences in McElroy's records and the documentation submitted to him by Horace and McElroy, but he emphasized that the "differences were not material to the decision to either uphold or deny reinstatement of the employee to County Service." The hearing officer denied McElroy's discharge appeal.

Upon administrative review, the circuit court reversed the hearing officer's ruling as petitioner was denied due process and ordered that petitioner be reinstated with back pay and benefits since his discharge on September 30, 1993.

## ISSUES PRESENTED FOR REVIEW

On appeal, respondent argues that: (1) the trial court erred in ruling that petitioner's constitutional rights were violated; and (2) the trial court erred in ruling that the findings of fact made by the hearing officer were not supported by the manifest weight of the evidence.

## OPINION

We first address whether petitioner was afforded procedural due process prior to his discharge and at the hearing.

■ The due process clause of the fourteenth amendment to the United States Constitution and section 2 of article I of our constitution prohibit the government from depriving any person of life, liberty, or property, without due process of law. See U.S. Const., amend.

XIV, § 1; Ill. Const. 1970, art. I, § 2. " '[D]ue process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand.' " *Sindermann v. Civil Service Comm'n*, 275 Ill. App. 3d 917, 923 (1995), quoting *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92 (1992). These fundamental principles of due process apply to administrative proceedings. However, "procedural due process in an administrative proceeding does not require a proceeding in the nature of a judicial proceeding." *Sindermann*, 275 Ill. App. 3d at 923. Rather, procedural due process in an administrative proceeding involving the discharge of a public employee requires that the employee be given notice of the charges against him, an explanation of the employer's evidence, and an opportunity to be heard. *Corpuz v. Board of Trustees*, 252 Ill. App. 3d 667 (1993). In addition, when an agency establishes disciplinary guidelines for its employees and then fails to follow the guidelines, this may constitute a violation of procedural due process. *Cooper v. Department of Children & Family Services*, 234 Ill. App. 3d 474, 486 (1992).

■ After a careful review of the record, we find that the department of office automation violated its own disciplinary procedures and consequently denied plaintiff's rights to procedural due process as guaranteed by the federal and state constitutions. This court takes notice of the fact that the disciplinary action policy and procedure was before the trial court. Pursuant to Supreme Court Rules 329 and 366 (134 Ill. 2d Rs. 329, 366), this court ordered the record supplemented to include said disciplinary action policy and procedure. The disciplinary action policy and procedure applies to all employees under the jurisdiction of the president of the Cook County board of commissioners. McElroy worked for the department of office automation, which is under the Cook County Board's jurisdiction. Under the disciplinary action policy and procedure, the disciplinary action is progressive wherein: (1) first offense—verbal reprimand; (2) second offense—written reprimand; (3) third offense—suspension; and (4) fourth offense—discharge. If the employee's conduct is a major cause infraction, such as insubordination, it need not necessarily be progressive. Most importantly, a disciplinary action form is to be completed for *all* steps of disciplinary action, whether it is a major or minor cause infraction. This form is to be given to an employee by his immediate supervisor in a conference discussing the disciplinary action and must be signed by the immediate supervisor, the department head and the employee.

In the case at bar, McElroy's alleged insubordination was cited as the major cause infraction by both respondent and the hearing of-

ficer. However, only *gross insubordination* is listed under major cause infractions. We cannot find that McElroy's refusal to move heavy equipment constituted gross insubordination as he was recovering from surgery of his Achilles tendon, which Horace knew. McElroy's conduct is really irrelevant, for the critical issue is whether a disciplinary action form was filled out by Horace for any disciplinary action taken against McElroy. The record demonstrates that no disciplinary action form was filled out by Horace for any infraction, major or minor, by McElroy. No form was ever executed for the alleged insubordination or for McElroy's one-day suspension in December of 1992. Horace was required to follow the procedures that respondent had established—she did not. Thus, McElroy was denied procedural due process.

Moreover, examining the termination process as a whole, we note that respondent's actions raise an inference of impropriety and arbitrariness. It was only in a two-month period, from October 23, 1992, to December 14, 1992, that Horace wrote memoranda and inserted them in McElroy's personnel file alleging poor work performance. In December of 1992, McElroy reviewed his personnel file because he felt he was being treated unfairly. Upon discovering that his supervisor placed memoranda without his knowledge, McElroy immediately sent a letter to Pritchett, giving an explanation to every memorandum that was contained in his personnel file. No one responded to his explanations. No one notified him as to the receipt of the letter.

After his discharge, on October 29, 1993, McElroy requested to see his personnel file again. Upon reviewing it, McElroy noticed that none of his responses were attached to the memoranda. In addition, other documents were missing from his file, such as his request for medical leave and certain unidentified disciplinary action forms. McElroy wrote a letter to Klem informing him of this. It had been nine months since he had forwarded his responses, and his hearing was in less than three weeks. Klem informed McElroy that they had received his letter, but the procedure to ascertain the accuracy of the documents submitted had not been completed at that time.

McElroy attempted to communicate his concerns to the officials, but all the efforts came to a dead end. Respondent did not investigate Horace's allegations or the disciplinary procedures Horace took. Respondent did not make an effort to give McElroy a copy of a complete official personnel file. Even at the hearing, Horace did not have the complete official personnel file of McElroy. Respondent would have us believe that all the memoranda were irrelevant because they were not the justification or basis for the termination of McElroy. Horace

had testified that McElroy's discharge was due to his improper conduct, such as his insubordination, his tardiness, and his incorrect connection of four computer terminals, all of which happened within one week, with the exception of the tardiness. This misses the point. Assuming Horace's allegations to be true, we nevertheless believe that this is irrelevant because petitioner was not afforded even a modicum of due process throughout these events. The belief that an individual is entitled to his opportunity to respond to charges levied against him by the State, be they in the context of a criminal or civil proceeding, has been a fundamental tenet of our notions of due process and centuries of Anglo-American jurisprudence. McElroy was not given a real opportunity to respond. He was simply ignored.

At the so-called hearing, McElroy was again denied procedural due process because the hearing officer's ruling was unreasonable and arbitrary. The hearing officer had emphasized that "the differences [between the records of both parties] were not material to the decision to either uphold or deny reinstatement of the employee to County service." We fail to perceive how the missing documents, McElroy's rebuttals, letters and responses to the charges leading to his termination were immaterial.

In sum, we believe the trial judge stated it well when he, in holding for McElroy, pronounced:

> "This court finds that hearing officer Ard completely ignored the constitutional ramifications of Ms. Horace's arguably overzealous pursuit of her duties. This court finds the [hearing officer's statement that the differences between the parties' records were not material to his ruling] to be against the manifest weight of the evidence, in that a violation of a petitioner's constitutional rights casts a heavy shadow on all of the proceedings. If, as this Court suspects, the events leading up to McElroy's termination were not entirely free of bias, motive and factors other than performance, it is the responsibility of the hearing officer to insure that he receives all the constitutional protection to which he is due. \*\*\* Though [McElroy] may never be employee of the month, the Constitution does guarantee that he is entitled to have his employer follow the disciplinary procedures in a fair and unbiased manner."

In light of our holding that the administrative hearing was fundamentally and constitutionally flawed, we need not review the actual decision of the hearing officer, that is, we need not review whether his findings of fact were contrary to the manifest weight of the evidence or whether they provided a sufficient basis for the hearing officer's conclusion. Accordingly, since petitioner's due process rights were denied, we affirm *in toto* the trial court's ruling that petitioner be

reinstated and that he be awarded back pay and benefits since his discharge on September 30, 1993. We remand this cause to the circuit court for a determination of damages and further proceedings not inconsistent with the views contained herein.

Affirmed and remanded.

CERDA, J., concurs.

JUSTICE GREIMAN, dissenting:

This matter presents the question whether McElroy's alleged acts of insubordination, tardiness and deficient installation of computer equipment warranted his discharge by the county. Oddly, the majority opinion observes that "McElroy's conduct is really irrelevant, for the critical issue is whether a disciplinary action form was filled out by Horace for any disciplinary action taken against McElroy." 281 Ill. App. 3d at 1043.

The majority's almost singular reliance on this "critical issue" of whether or not a form was filled out documenting disciplinary "steps" of which both parties were aware is, I believe, misplaced. The disciplinary action policy and procedures (DAPP) upon which the majority relies was not offered in evidence at the administrative hearing or before the trial court but is grafted onto the record by the majority's order. In fairness to the majority, the record does disclose reference to DAPP and it is apparent that the hearing officer, trial judge and the parties were aware of its provisions. However, relying on this instrument, the majority concludes that the county's failure to strictly adhere to its own regulations governing employee discipline resulted in a violation of McElroy's procedural due process rights.

Procedural due process in administrative proceedings does not require a proceeding in the nature of a judicial proceeding. *Telcser v. Holzman*, 31 Ill. 2d 332, 201 N.E.2d 370 (1964). A fair hearing before an administrative agency includes notice and the opportunity to be heard, the right to cross-examine witnesses, and impartial evidentiary rulings. *Daly v. Pollution Control Board*, 264 Ill. App. 3d 968, 970-71, 637 N.E.2d 1153 (1994).

The record reveals that McElroy had access to his personnel file eight months prior to discharge, had an opportunity to view the complaints leveled against him and prepared a detailed response to each charge. At the time of discharge, the responses were being examined. The record further reveals that McElroy was provided ample process at the administrative hearing in this matter. He was

notified well in advance of the hearing, he testified at that hearing, submitted documentary evidence and had the benefit of counsel who cross-examined Horace. Even McElroy's responses to the challenged information in his personnel file were before the hearing officer.

I fail to see how, as the majority opinion notes, the "administrative hearing was fundamentally and constitutionally flawed." 281 Ill. App. 3d at 1044. The majority seems to base this observation, again, on the fact that the county may have violated its own regulations. See *Cooper v. Department of Children & Family Services*, 234 Ill. App. 3d 474, 486, 599 N.E.2d 537 (1992). However, contrary to the majority view, violation of internal regulations does not necessarily implicate procedural due process. *Bowens v. N.C. Department of Human Resources*, 710 F.2d 1015, 1019 (4th Cir. 1983) ("agency's violation of its regulations is not unconstitutional unless the regulations are necessary to afford due process"). Moreover, as the facts of *Cooper* demonstrate, a violation of agency rules will not be found violative of procedural due process absent prejudice to the petitioner. The *Cooper* court found that the Department of Children and Family Services (DCFS) held its administrative hearing after the 30-day requirement imposed by section 9(a) of the Child Care Act of 1969 (Act) (Ill. Rev. Stat. 1989, ch. 23, par. 2219(a)). *Cooper*, 234 Ill. App. 3d at 481. Subsequent to this finding, the *Cooper* court held:

> "Since DCFS did not violate any of its own regulations, the Coopers were not denied due process. There is no evidence to show that they were in any way prejudiced by the delay in the setting of the hearing or by the fact that the hearing was held beyond the 30-day requirement." *Cooper*, 234 Ill. App. 3d at 486.

Because I do not believe that Horace's failure to submit a form documenting her discussions with McElroy prejudiced him or affected his due process rights, I disagree with the majority's finding of a constitutional violation and its conclusion that because of that finding "we need not review the actual decision of the hearing officer, that is, we need not review whether his findings of fact were contrary to the manifest weight of the evidence or whether they provided a sufficient basis for the hearing officer's conclusion." 281 Ill. App. 3d at 1044. In addition to the procedural issues, this case is also about the conduct of McElroy.

Accordingly, I would review both the conduct of McElroy and the factual findings and decision of the hearing officer. The decision of an administrative agency should be affirmed unless the findings and conclusions of the agency are found to be contrary to the manifest weight of the evidence. *Central Illinois Public Service Co. v. Department of Revenue*, 158 Ill. App. 3d 763, 767, 511 N.E.2d 222 (1987). A

decision is contrary to the manifest weight of the evidence only when, after viewing the evidence in the light most favorable to the agency, the court determines that no rational trier of fact could have agreed with the agency's decision. *American Federation of State, County & Municipal Employees v. Illinois Educational Labor Relations Board*, 197 Ill. App. 3d 521, 525, 554 N.E.2d 476 (1990). Because the record supports the hearing officer's decision, I would reinstate the hearing officer's decision and reverse the trial court.