LIANE KYLES, Indiv. and as Special Adm'r of the Estate of Emmanuel Williams, Deceased, *et al.*, Plaintiffs-Appellants, v. MARYVILLE ACADEMY, Defendant-Appellee.

First District (1st Division)   Nos. 1—04—0835, 1—04—1257 cons.

Opinion filed June 27, 2005.—Rehearing denied September 1, 2005.

Richard S. Zachary, of Ashman & Stein, of Chicago, for appellants.

Jeffrey Edward Kehl and Robert C. Yelton III, both of Yelton & Kehl, Ltd., of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiffs, Liane Kyles, individually and as special administrator of the estate of Emmanuel Williams, deceased, and Taurus Kyles, appeal the circuit court's grant of summary judgment to the defendant, Maryville Academy, and its denial of their motion to reconsider. For the following reasons, we reverse and remand.

## FACTUAL BACKGROUND

Maryville converted the building that had housed Cuneo Hospital, at 810 West Montrose Avenue in Chicago, into a residential facility for troubled youths known as Columbus Maryville. Taurus resided there with her infant son Emmanuel, after being placed there by the Department of Children and Family Services (DCFS).

Across the hall from Taurus' room, what had been two patient rooms were consolidated into a single, large television (TV) room through the removal of a dividing wall. Each of the former rooms had its own restroom. One of the restrooms came to be used to store, at the very least, two mattresses.

On the afternoon of March 16, 1996, at least one other resident of the facility lit one of the mattresses stored in the TV room on fire. The fire and smoke ultimately spread throughout the TV room and into the hallway.

Around this time, Taurus opened the door to her room and felt heat. She decided to try to escape from the floor via the nearest available staircase; she started out with herself and Emmanuel under a blanket. Unfortunately, that staircase was in the direction of the fire, and they could not proceed. Taurus and Emmanuel returned to their room, where Taurus was shortly overcome by smoke. When Taurus awoke, she was being placed in an ambulance. Emmanuel was also rushed to a hospital, but died.

On February 28, 2001, the plaintiffs refiled a complaint, originally filed in 1996 and voluntarily dismissed on March 1, 2000.[1] The complaint alleged that Maryville had a duty "to use reasonable care to maintain [the building at 810 West Montrose] in a reasonably safe condition and [to] comply with applicable sections of the Chicago

---

[1]No copy of the 1996 complaint has been included in the record and neither party contends that it is necessary for our resolution of the present appeal.

Building Code Section 13—196—010, *et seq.*,"[2] but that it failed to do so, generally, by having inadequate fire and smoke detectors and alarms, and inadequate emergency and evacuation procedures. In particular, the complaint alleged that Maryville "failed to provide proper fire detection as required for use in storage areas as required for the type of occupancy and use of the facility." The complaint contended that, as a result of the failure to provide warning, through inadequate fire detection and alarm systems, Taurus suffered injuries from smoke inhalation, and Emmanuel died from smoke inhalation and/or burns.

Maryville moved to strike portions of this complaint, noting that many of the paragraphs alleging its duties were duplicative in form and substance, and contending that plaintiffs' allegation of its duty to maintain sufficient emergency procedures was immaterial, since no breach of that duty was alleged to be the cause of the plaintiffs' injuries. In response to Maryville's motion, the plaintiffs moved to file a first amended complaint, which was granted.

The first amended complaint varied little from its predecessor, except that it created two separate counts for each plaintiff, one appearing to claim that Maryville's duties derived from the common law, the other alleging duties under "applicable sections of the Chicago Building Code Section 13—196—010, *et seq.*" The amended complaint also did not limit its claim of causation to any particular breach of Maryville's alleged duties, instead claiming that the plaintiffs' injuries were a "proximate result of one or more of all of the foregoing acts and omissions on the part of the Defendant." In the statutory counts, plaintiffs maintained their allegation that Maryville "failed to provide proper fire detection as required for use in storage areas as required for the type of occupancy and use of the facility."

Maryville moved to dismiss the common law counts of the first amended complaint, contending that precedent established that there was no common law duty for a landowner to anticipate fires on his land or to provide fire prevention equipment. In response to this motion to dismiss, plaintiffs sought leave to file a second amended complaint, which was also granted.

Plaintiffs' second amended complaint maintained the structure of the first amended complaint, alternating negligence claims based on

---

[2]Section 13—196—010 is the first section in a chapter of the Chicago Municipal Code (Code) titled "Existing Buildings-Minimum Requirements." Chicago Municipal Code § 13—196—010 (2005). This chapter has 95 sections and addresses fire detection and suppression systems, primarily, in the 24 sections between sections 13—196—100 and 13—196—260.

alleged common law and statutory duties. In their common law claims, plaintiffs added allegations that Maryville knew, or should have known, that its DCFS wards were more likely to start fires and that it adopted internal regulations prohibiting their access to matches. In the statutory counts, plaintiffs continued to assert that the statutory duties would be found in chapter 13—196 of the Code, without referring to any particular section therein. Maryville moved to dismiss the common law counts of the second amended complaint on the same grounds it proffered in opposition to those counts in the first amended complaint. However, Maryville also moved to dismiss the statutory counts, arguing that, by only citing to the building code generally, plaintiffs were "intentionally obfuscating" the statutory basis "of the duty by reference to a large and notably mostly irrelevant municipal code." Maryville claimed that, "as a result, the court cannot determine whether there is actually a provision in the code which would impose a duty on the Defendant." Plaintiffs, in their response to this motion to dismiss, merely argued general principles of premises liability in support of their common law claims. As to their statutory claims, instead of identifying the code sections on which they relied, plaintiffs only stated: "[T]his court may take judicial notice of any applicable codes or ordinances of the City of Chicago. *** Plaintiffs submit that their claim states violations of the ordinances." In reply, Maryville countered that notice could only be taken when the statute was readily accessible to the court and made of record, neither of which, it asserted, was true in this case. The circuit court dismissed the common law counts with prejudice, but dismissed the statutory counts with leave to amend.

On February 19, 2002, plaintiffs filed their third amended complaint. In this complaint, plaintiffs cited to specific provisions of the building code when alleging that certain fire detection and alarm systems were required. With regard to their allegation that Maryville "failed to provide proper fire detection as required for use in storage areas as required for the type of occupancy and use of the facility," plaintiffs cited to Code sections 13—196—110 and 13—196—200. Section 13—196—110 requires that certain statutorily classified dwelling units have approved smoke detectors within 15 feet of rooms used for sleeping. Chicago Municipal Code § 13—196—110 (amended September 8, 1986). Section 13—196—200 sets forth what "class" of fire detection system is required for various types of buildings, with the specific requirements for each class of system mandated in other sections of the Code. Chicago Municipal Code § 13—196—200 (amended May 4, 1994). Maryville answered this complaint, denying all pertinent allegations, and discovery ensued.

Maryville moved for summary judgment on September 16, 2004, contending that the undisputed facts showed that there were no building code violations at Maryville's facility. In support of its contention, Maryville cited to the deposition testimony of Lieutenant Wayne Krueger, an inspector for the Chicago fire department who inspected the Columbus facility shortly before and after the fire, and reported no Code violations. Lieutenant Krueger also testified that Chicago's Department of Buildings had identified Columbus Maryville as falling outside of the building classification that required smoke detectors within 15 feet of sleeping rooms.

In opposition to Maryville's motion, plaintiffs submitted an affidavit from Taurus and a certified statement from Kevin Smith, a retained fire expert. Taurus averred, among other things, that she "observed mattresses and other combustible items being stored in a bathroom in [the] T.V. room" and that she "never observed a heat detector in the T.V. room." In his statement, one of Smith's expressed opinions was that "Maryville Academy violated the Chicago Municipal Code by not having a heat detector in the T.V. room where the fire began because the washroom in the T.V. room was being used as a store room with combustible items."

We note at this juncture that plaintiffs appear to have abandoned their claim that there was any Code violation with respect to the placement of fire detectors in the proximity of sleeping rooms. Instead, plaintiffs apparently rely exclusively upon their contention that, under the provisions of the Code, a fire detector was required in the storage area in the TV room.

In reply, Maryville objected to the lack of any foundation presented for Smith's opinions in his statement and, in particular, noted that he testified in a deposition "that [section] 13—196—200 does not say anything about smoke detectors being required in storage rooms as alleged by the Plaintiffs." Maryville reemphasized that point in another section of its reply, stating "neither [section] 13—196—110 nor [section] 13—196—200 require[s] the use of fire detection in storage areas. That alone warrants summary judgment on this issue." Maryville further contended that plaintiffs failed to provide any evidence to show that Maryville's failure to place a heat detector in the TV room actually caused their injuries.

At the hearing on Maryville's motion, the circuit court advised plaintiffs' counsel that "I don't think there is a cause of action stated here." In response, plaintiff's counsel admitted that he "did misstate a couple of the municipal code provisions." He did not, however, explain which were misstated and how they should have been corrected. When Maryville's counsel repeated his argument that section

13—196—200 did not require fire detection systems in storage areas, plaintiffs' counsel did not attempt to draw the court's attention to any other statutory provision which would have required such fire detection systems.

The circuit court granted Maryville's motion for summary judgment on November 5, 2003. In its order, the court indicated that it's decision was based on "each and every reason set forth by movant in written motion papers." The court concluded that there were "no genuine issues of material fact in dispute" and found "the issues presented [to be] free from doubt."

Plaintiffs moved the circuit court to reconsider on December 5, 2003. In the motion for reconsideration, plaintiffs finally set out the citation for the proper Code section requiring placement of fire detectors in storage areas, stating that such detectors were required under section 13—196—240 (Chicago Municipal Code § 13—196—240 (amended May 4, 1994)), which provides:

> "In every fire alarm system required in this code, automatic fire detectors shall be installed as an integral part of a fire alarm system in rooms or portions of the building as follows:
>
> * * *
>
> (c) In every storeroom, maintenance shop, fan room, mechanical equipment room, laundry, linen room, janitor closet, kitchen and storage area."

Plaintiffs described their previous citation to section 13—196—200 as a "typographical error." They contended, in any event, however, that they had always "accurately summarized the sense of the relevant provision of the Code [in the complaint], despite the scrivener's error." Plaintiffs contended that there was a disputed factual issue surrounding whether a smoke detector was in the bathroom where the fire started, precluding summary judgment.

In response, Maryville argued that plaintiffs had a duty to correctly cite the statutory provisions on which they intended to rely and that

> "where, as here, the court was asked to consider whether summary judgment should be entered on specifically alleged code provisions, it is not only beyond the four corners of the Complaint but rather disrespectful to seek to set aside that summary judgment on a provision that was never before the court in the first place."

In their reply in support of reconsideration, filed on January 27, 2004, plaintiffs indicated their intent to file a motion for leave to file a fourth amended complaint correctly citing to section 13—196—240 of the Code, which plaintiffs did, in fact, file the same day as their reply. Plaintiffs noticed that motion for hearing on February 20, which ap-

parently was the date ultimately set for the hearing on the motion to reconsider as well.

On February 20, 2004, at the hearing set for that date, the circuit court proceeded to hear oral arguments on the motion to reconsider which were substantially identical to the arguments presented by the parties in their written submissions. As to the motion for leave to amend the complaint, the circuit court noted that that motion was not properly filed under the circuit court rules and instructed the parties to report to the presiding judge's courtroom for the setting of a briefing schedule on the motion. Plaintiffs' counsel reported to the presiding judge's courtroom after a period of time and was informed that Maryville's counsel had waited for him, but had since left, and was awaiting service of the briefing schedule at his office. However, no further action on the January 27 motion appears to have occurred. Later that same day, the circuit court rendered its decision on the motion to reconsider and stated in the written order pursuant thereto that, "[N]othing contained in the written or oral submission of counsel warrants the relief sought."

On March 2, 2004, plaintiffs again filed a motion for leave to file an amended complaint. In their motion, plaintiffs repeated their contention, made in their previous motion for leave to amend and in their motion to reconsider, that they had a meritorious claim under section 13—196—240 of the Code that they should be allowed to present by correcting the mis-citation resulting from a typographical error. That motion was set for hearing on April 14. Maryville, in turn, repeated its argument that such a claim was precluded by the absence of any proof that plaintiffs' injuries were caused by the alleged ordinance violation, and contended that the substance of the claim had already been determined in the circuit court's summary judgment ruling. On March 19, while their motion for leave to amend awaited hearing, plaintiffs filed a notice of appeal from the denial, on February 20, of their motion to reconsider. On April 14, at the hearing set for plaintiff's motion for leave to file a fourth amended complaint, the circuit court inquired and ascertained that the appeal of the order denying the motion to reconsider was still pending.

The circuit court denied the motion for leave to amend the same day. In its written order, the circuit court appeared to acknowledge its lack of jurisdiction. Nevertheless, the court substantively denied the motion for leave to amend, stating, "[F]or each and every reason set forth by respondent both in its written submission and in oral argument had this day, movants have failed to demonstrate a valid basis upon which to grant the pending motion." On April 29, 2004, plaintiffs filed a second notice of appeal from the denial of their motion for leave

to amend which was entered on April 14. We consolidated these two appeals for review.

## ANALYSIS

On appeal, plaintiffs contend that they had a valid claim of negligence based on Maryville's violation of section 13—196—240 of the Code. They argue that they should have been allowed to proceed in presenting this contention, either through the circuit court reconsidering its grant of summary judgment or through allowing an amended complaint that would properly cite that section.

Preliminarily, Maryville challenges the jurisdiction of this court to hear any appeal from the denial of plaintiffs' motion for leave to file an amended complaint. Maryville contends that the circuit court lost jurisdiction over that motion upon the filing of the March 19 notice of appeal from the denial of their motion to reconsider and that our review is thus precluded as well. Maryville asserts that, since the circuit court had no jurisdiction, its order was void and we therefore have no jurisdiction to consider the merits of the circuit court's determination on the motion for leave to amend. Maryville further argues that the second notice of appeal filed on April 29 was untimely since motions for leave to amend do not toll the time limits for filing a notice of appeal.

■ We agree with Maryville that plaintiffs' filing of a notice of appeal on March 19 from their motion to reconsider precluded the circuit court from thereafter ruling on their motion to file another amended complaint. As the court in *Bachewicz v. American National Bank & Trust Co. of Chicago*, 135 Ill. App. 3d 294, 297-98 (1985), explained:

> "The proper filing of a notice of appeal causes the jurisdiction of the appellate court to attach and deprives the trial court of jurisdiction to modify its judgment or to rule on matters of substance which are the subject of appeal. [Citation.] *** [T]he trial court is restrained from entering any order which would change or modify the judgment or its scope, *and from entering any order which would have the effect of interfering with the review of the judgment.* [Citation.]" (Emphasis in original.)

Thus, in an earlier appeal in the same case, the appellate court held that the *Bachewicz* plaintiff's filing of a notice of appeal from the grant of a defendant's motion to dismiss "divested the trial court of jurisdiction to allow the filing of an amended complaint." *Bachewicz v. American National Bank & Trust Co. of Chicago*, 75 Ill. App. 3d 252, 258 (1979).

■ The lack of jurisdiction in the circuit court, in turn, affects our own jurisdiction in that we are then limited to considering only the lack of jurisdiction below, and we may not consider the substantive

merit of the circuit court's unauthorized actions. See *People v. Flowers*, 208 Ill. 2d 291, 307 (2003) ("Because the circuit court had no jurisdiction to consider Flowers' Rule 604(d) motion, the appellate court, in turn, had no authority to consider the merits of her appeal from the circuit court's judgment denying her motion. The only matter properly before the appellate court was the circuit court's lack of jurisdiction over Flowers' untimely Rule 604(d) motion"). In this regard, we note the substantial procedural similarity of this case to that presented in *People v. Vasquez*, 339 Ill. App. 3d 546, 553 (2003).

In *Vasquez*, after the defendant failed to appear for trial and was subsequently convicted *in absentia*, the defendant's attorney filed a notice of appeal. *Vasquez*, 339 Ill. App. 3d at 548. That appeal was subsequently dismissed on the State's motion. *Vasquez*, 339 Ill. App. 3d at 548. After his capture, the defendant filed motions to reduce his sentence and for a new trial. *Vasquez*, 339 Ill. App. 3d at 549. The circuit court granted the motion to reduce the sentence, taking off two years from the original sentence imposed. *Vasquez*, 339 Ill. App. 3d at 549. The defendant filed a motion seeking further reconsideration of his sentence and, on its denial, filed a second notice of appeal. *Vasquez*, 339 Ill. App. 3d at 549. On appeal, the *Vasquez* court noted that, on account of the first notice of appeal, the circuit court acted without jurisdiction when it modified the sentence and that its order was therefore void. *Vasquez*, 339 Ill. App. 3d at 551. The court then held that the "void orders [did] not cloak us with jurisdiction to reach the merits of defendant's appeal." *Vasquez*, 339 Ill. App. 3d at 553. The *Vasquez* court vacated the order reducing the sentence and dismissed the second notice of appeal for lack of jurisdiction, limiting itself to exercise jurisdiction over the first appeal if the defendant sought its reinstatement. *Vasquez*, 339 Ill. App. 3d at 553-54. We think the same result should obtain here and will therefore only consider the appeal addressing the denial of plaintiffs' motion to reconsider.

Although they do not explicitly articulate the argument, plaintiffs would appear to contend that the filing of their motion for leave to amend would nullify and serve to cancel their notice of appeal of March 19 under the provision of Supreme Court Rule 303(a) which provides that the filing of a postjudgment motion within 30 days of judgment serves to nullify a previously filed notice of appeal and tolls the running of time for appeal until that motion is disposed of (see 155 Ill. 2d R. 303(a)(2)). Such contention, even if clearly set forth, would fail for two reasons. First, our supreme court has recognized that motions to amend complaints do not, in fact, attack underlying judgments and, therefore, are not considered to be posttrial motions for purposes of Rule 303(a)(1) (155 Ill. 2d R. 303(a)(1)). See *Berg v. Al-*

*lied Security, Inc.*, 193 Ill. 2d 186, 189 (2000) (holding an appeal to be untimely and unreviewable where the plaintiff filed both a motion to reconsider and a motion to amend her complaint, but where she waited until the denial of her motion to amend, which was subsequent both to the denial of her motion to reconsider and the passing of 30 days from the judgment); accord *Andersen v. Resource Economics Corp.*, 133 Ill. 2d 342, 346 (1990). Second, even if the motion for leave to amend were to be a postjudgment motion under Rule 303(a), it would be considered a successive postjudgment motion which would not extend the time for their appeal. See *B-G Associates, Inc. v. Giron*, 194 Ill. App. 3d 52, 57 (1990) ("The circuit courts *** have no authority to hear successive post-judgment motions"); *Sears v. Sears*, 85 Ill. 2d 253, 259 (1981) ("A second post-judgment motion (at least if filed more than 30 days after judgment) is not authorized by either the Civil Practice Act or the rules of this court and must be denied"); *Deckard v. Joiner*, 44 Ill. 2d 412, 419 (1970) ("They [additional post-judgment motions] were merely attempts to have the trial court review its own orders after thirty days, which it cannot do. Such motions or petitions may not be utilized to toll the time for appeal").

We now turn to the validity of the grant of summary judgment and the further denial on February 20 of the plaintiffs' motion to reconsider, which we are free to consider on their merits. The standard of review for a grant of summary judgment, as well as for a motion to reconsider that only asks a court to consider again its application of the law to the case as it existed at the time of judgment, is *de novo*. See *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995) (addressing summary judgments); *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 838 (2002) (addressing motions to reconsider). However, when a motion to reconsider sets new matters before the court, such as new facts or legal theories, the submitting party essentially seeks a "second bite at the apple," and the circuit court therefore has discretion over whether to consider the new matter as well as its decision on the motion. *O'Shield*, 335 Ill. App. 3d at 838. A court abuses its discretion if it acts "arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceed[s] the bounds of reason and ignore[s] recognized principles of law so that substantial prejudice result[s]." *In re Marriage of Aud*, 142 Ill. App. 3d 320, 326 (1986).

Summary judgment should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and the "party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2002). However, summary judgment is a drastic measure

and should only be granted when the moving party's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Thus, all evidence before a court considering a summary judgment motion must be considered in the light most favorable to the nonmoving party (*In re Estate of Hoover*, 155 Ill. 2d 402, 410-11 (1993)), and summary judgment should be denied not only if there are disputed facts, but also if reasonable people could draw different inferences from the undisputed facts (*Wood v. National Liability & Fire Insurance Co.*, 324 Ill. App. 3d 583, 585 (2001)).

We note at the outset that there is no apparent disagreement that if section 13—196—240 of the Code was properly pled in the first instance, summary judgment would have been inappropriate. No one appears to dispute that there was sufficient evidence to show that the bathroom in the TV room was used as a storage area so as to fall within the provisions of section 13—196—240.[3] Accordingly, a failure to install an automatic fire detector would be *prima facie* evidence of negligence if it were found to be a proximate cause of injury. See Chicago Municipal Code § 13—196—240 (amended May 4, 1994); *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 434-35 (1991) (holding the violation of a statute to be *prima facie* evidence of negligence, so that a plaintiff may recover if he is a member of the class of persons the statute was enacted to protect and if the statutory violation caused his injury). Therefore, a dispute as to whether there were automatic fire detectors in place or whether the absence of fire detectors was a cause of plaintiff's injuries would further preclude summary judgment.

In that respect, we note that Maryville contends that the evidence conclusively established the presence of a heat detector and, alternatively, that there was no proof that the absence of a heat detector caused plaintiffs' injuries. However, in his deposition, Lieutenant Krueger, in speaking of the area where the fire broke out, said:

"[Y]ou would have a heat detector, and the only time you would have a heat detector is if you use that particular room for storage.

If they used that at some time for storage, at one time or another, that heat detector could still be in place; but I never noticed a heat detector in that particular room."

He went on to say that such a heat detector would be activated at a temperature of 135 degrees, resulting in a "soft chiming" that would

---

[3]Even if there was such a dispute, there is no question that it would involve a question of material fact so as not to be subject to summary adjudication.

"go bing, bing, bing, bing, bing bing bing [*sic*]" four times, and that the chimes would be placed so as to be "audible to people on the floor." In our view, this testimony created a dispute as to whether Maryville breached its statutory duty by failing to place a fire detector in the TV room's bathroom. Moreover, this testimony allowed an inference that Taurus or Maryville's staff would have been alerted to the existence of the fire by the chiming in sufficient time to allow escape, had there been a heat detector in the TV room's bathroom, which was the origin of the fire, and that the failure to place a heat detector in that room therefore caused, as a matter of fact, Taurus' injuries and Emmanuel's death. See *Martinez v. Mobil Oil Corp.*, 296 Ill. App. 3d 607, 614 (1998) (stating that issues of causation are generally for the jury). That testimony therefore precluded the entry of summary judgment for Maryville. Thus, our core determination must focus on whether the circuit court erred in choosing not to acknowledge the existence and applicability of section 13—196—240 of the Code based on plaintiffs' failure to cite to that section.

■ Supreme Court Rule 133(a) requires that "[i]f a breach of statutory duty is alleged, the statute shall be cited in connection with the allegation." 134 Ill. 2d R. 133(a); see also *McCrotty v. Baltimore & Ohio Southwestern R.R. Co.*, 223 Ill. App. 390, 393 (1921) ("when a cause of action is predicated upon a statute or ordinance, the statute or ordinance must be pleaded. [Citation.] Unless so specially pleaded, the ordinance is not admissible in evidence"). However, the manner of citation does not have to be through numerical reference to the particular code or statutory section; it is sufficient if a party sets forth the substance of the language of the statute relied on. See *Carter v. Winter*, 50 Ill. App. 2d 467, 478 (1964) ("if a breach of statutory duty is alleged, the statute shall be cited in connection with the allegation. To cite means to quote, as by way of authority or proof. Does that mean that the Chapter and Section number be set out? We think not. If the breach of statutory duty is alleged, the setting out of the language of the statute is sufficient"); *Jarvis v. Herrin City Park District*, 6 Ill. App. 3d 516, 521 (1972) ("The trial court, in ordering plaintiff to amend her complaint to allege 'wilful and wanton negligence,' seems to have been acting under the theory that plaintiff could state a cause of action under the statue only by such an allegation, using the words of the statute itself. We do not agree. 'In stating a cause of action which is derived from a statute, it is not necessary, in alleging the facts which bring plaintiff within it, to use the exact words of the statute, words of equivalent import being equally proper, if it appears, from a reasonable interpretation of the allegations, that the redress sought falls squarely within the purview of the statute.'

[Citation.]"); *Illinois Central R.R. Co. v. Ashline*, 171 Ill. 313, 315 (1898) ("The pleader was not required to set out the ordinance *in haec verba*, but he was required at least to set out the substance of the ordinance").

▪ In this case, throughout their pleadings, plaintiffs have alleged that Maryville violated the Code in its failure "to provide proper fire detection as required for use in storage areas as required for the type of occupancy and use of the facility" thereby invoking the substance of section 13—196—240(1)(c), which requires "automatic fire detectors [to] be installed as an integral part of a fire alarm system" in "every storeroom *** and storage area." Chicago Municipal Code § 13—196—240(1)(c) (amended May 4, 1994). Thus, but for the incorrect numerical citation, plaintiffs satisfied the bottom line pleading requirement under Rule 133(a). See *Swift & Co. v. Raleigh*, 54 Ill. App. 44, 47 (1894) ("The object of pleading is to apprise the opposite party of the charge against him, or of the defense interposed, so that due preparation for trial may be made, and not to furnish a sword for defeating a good case on technical and fanciful distinctions, which in no manner interfere with the proper decision of the case on its merits").

Moreover, in this proceeding, Maryville never even attempted to challenge the substance of plaintiffs' allegation that there was a section within the Code imposing such requirements. Obviously, it could not make that challenge since, although incorrectly cited, such a section does exist under section 13—196—240. Rather, instead of asserting that no such section existed, Maryville carefully argued merely that the specific numerical sections of the Code cited by plaintiffs did not impose that duty. This is a challenge more appropriately raised in a pleadings motion under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2002)), rather than in a fact motion for summary judgment. 4 R. Michael, Illinois Practice § 41.2, at 293 (1983), quoting Ill. Ann. Stat., ch. 110, par. 2—619, Historical & Practice Notes, at 662 (Smith-Hurd 1983): " 'if the only ground of a motion is a defect that appears on the face of the pleading attacked, the appropriate method of reaching that defect is by a motion under section 2—615' "). Such an attack would not have led to the dismissal of the complaint with prejudice, but only to the striking of the incorrect citations with the requirement that the correct citations be substituted. See *Brooks v. Saloy*, 334 Ill. App. 93, 103 (1948) (holding that while a complaint did "not comply with [the] rule *** respecting the citation of the statute relied upon, the complaint should not for this reason [have been] dismissed for want of equity," and that, instead, a "more specific complaint" should have been ordered by the court); *cf. Droen v. Wechsler*, 271 Ill. App. 3d 332, 335 (1995) (holding

that a "circuit court abuses its discretion if it refuses to allow a plaintiff to amend his complaint when a cause of action can be stated if the complaint is amended"). Defendant, however, did not choose to file a pleadings motion under section 2—615 but, rather, chose to mount its attack by way of a motion for summary judgment. In a summary judgment proceeding, this challenge would not be enough to traverse the substance of plaintiffs' pleading so as to negate all possible grounds of recovery and make the judgment free from doubt.[4] See *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 688 (2000) (holding that a plaintiff may rely on the pleadings to create questions of material fact up and until the defendant supplies counter facts that would demonstrate its entitlement to judgment as a matter of law). At the very least, Maryville's contention would leave the question of whether such an ordinance existed. See *Holder v. City of Galena*, 19 Ill. App. 409, 411 (1886) ("The question of the enactment of an ordinance, or of its publication as required by the organic law of the municipality, or of its identification, are all clearly questions of fact").

Nor for that matter is there any indication that Maryville was misdirected by that erroneous citation. In the depositions leading up to its motion for summary judgment, Maryville prepared to defend against the substance of plaintiffs' intended section 13—196—240 allegation by asking questions of the deponents that attempted to establish the presence of a heat detector in the TV room's bathroom and, alternatively, that the absence of a heat detector would not have prevented the plaintiffs' injuries. Maryville, in fact, made both of those arguments in its motion. Moreover, Maryville had to be aware of the possible existence of some ordinance mandating the presence of automatic fire detectors in storerooms, since Lieutenant Krueger suggested that fact in his deposition testimony that we set out above.

Although the existence of statutes and ordinances, in any event, must be judicially noticed (735 ILCS 5/8—1001 (West 2002) (providing that every court of original jurisdiction "shall take judicial notice" of "[a]ll general ordinances of every municipal corporation within the

---

[4]It may well be that Maryville's counsel would have been required under Rule 3.3(a)(3) of the Rules of Professional Conduct to reveal the existence and applicability of section 13—196—240 if he were aware of its existence. See 134 Ill. 2d R. 3.3(a)(3) ("In appearing in a professional capacity before a tribunal, a lawyer shall not: *** fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel"). Under such circumstances, plaintiffs' miscitation, where opposing counsel was aware of its correct citation, would not provide entitlement to summary judgment.

State")), we recognize that it would be impractical to require a circuit court in reviewing a summary judgment motion to be omnisciently aware of a municipal ordinance without the assistance of its proponent. See 735 ILCS 5/8—1004 (West 2002) ("The court may inform itself of such laws in such manner as it may deem proper, and the court may call upon counsel to aid it in obtaining such information"); *Ralls v. Village of Glendale Heights*, 233 Ill. App. 3d 147, 157 (1992) ("the trial court was required to take judicial notice of such ordinances once brought to its attention"); *People ex rel. McCallister v. Keokuk & Hamilton Bridge Co.*, 287 Ill. 246, 250-51 (1919) ("judicial notice is a branch of the law of evidence, and authorizes the court, whenever a fact is material, to take judicial notice of the fact, but it must be presented to the court in some way"). This is all the more true where the proponent misdirects the court to its location by way of an improper citation. However, the stringency of such an imposition is not confronted where, as here, the plaintiffs, who are the proponents of this ordinance, corrected the citation in a motion to reconsider. Under these circumstances, the only "new matter" considered on the motion to reconsider was the corrected citation, which, as noted, was substantively set forth in the plaintiffs' complaint and would have been a proper subject of judicial notice in the first instance.

Accordingly, while we would not necessarily fault the circuit court for initially granting summary judgment where the court's attention to the proper ordinance was misdirected by an incorrect numerical citation, we nevertheless find that the circuit court abused its discretion in failing to reconsider summary judgment when plaintiffs, having already pled the substance of the correct provision, ultimately, albeit in a motion to reconsider, specifically directed the court's attention to the numerically correct citation.

For all the foregoing reasons, we reverse the judgment of the circuit court and remand for further proceedings.

Reversed and remanded.

CAHILL, P.J., and McBRIDE, J., concur.