# Illinois Official Reports

## Appellate Court

---

### *Austin Gardens, LLC v. City of Chicago Department of Administrative Hearings*, 2018 IL App (1st) 163120

---

| | |
|---|---|
| Appellate Court Caption | AUSTIN GARDENS, LLC, Plaintiff-Appellant, v. THE CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-16-3120 |
| Filed | January 19, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-050060; the Hon. Joseph M. Sconza, Judge, presiding. |
| Judgment | Orders vacated. |
| Counsel on Appeal | Saul, Ewing, Arnstein & Lehr, LLP, of Chicago (Hal R. Morris, David C. Dunkin, and Michael J. Pollock, of counsel), for appellant.<br><br>Edward N. Siskel, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Suzanne M. Loose, Assistant Corporation Counsel, of counsel), for appellee. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Justices Connors and Delort concurred in the judgment and opinion. |

**OPINION**

¶ 1    In this administrative review action, plaintiff-appellant Austin Gardens, LLC (Austin Gardens), appeals the decision of the City of Chicago Department of Administrative Hearings (DOAH) which denied Austin Gardens' motion to vacate a 2013 default judgment. For the following reasons, we conclude that the DOAH lacked jurisdiction to consider the motion.

¶ 2                               BACKGROUND

¶ 3    This appeal stems from two separate actions brought by the City of Chicago (City) alleging building code violations at real property owned by Austin Gardens. In April 2005, the City initiated an action in the municipal division of the circuit court of Cook County (the circuit court action) alleging certain building code violations at Austin Gardens' property at 300 to 308 North Central Avenue in Chicago. The circuit court action remained pending until 2014.

¶ 4    Meanwhile, in May 2013, the City initiated a separate action in the DOAH (the DOAH action) by filing an administrative complaint alleging that a March 2013 inspection revealed 13 violations at two properties owned by Austin Gardens, including the same property that was the subject of the circuit court action. Certain of the building code ordinances that were cited in the administrative complaint were also the subject of alleged violations in the circuit court action. In addition to Austin Gardens, the administrative complaint named each of the company's individual members as respondents in the DOAH action.

¶ 5    Austin Gardens did not appear at subsequent hearing dates in the DOAH action on June 25, 2013, and August 27, 2013. As a result, on August 27, 2013, an administrative law judge (ALJ) entered a default order in favor of the City in the DOAH action (the default judgment) that specified $500 fines for each of 12 separate building violations, plus $40 in costs, for a total judgment of $6040. The default judgment, which was mailed to Austin Gardens on August 30, 2013, specified that "You have 21 days from the above mailing date to file a motion to set-aside (void) this default order for good cause with the [DOAH]."

¶ 6    Separately, in April 2014, the City and Austin Gardens entered into an "Agreed Order of Injunction and Judgment" (Agreed Order) resolving the circuit court action. Under the Agreed Order, Austin Gardens agreed to pay $2000 in full settlement of the allegations in that action. The Agreed Order provided that the matter was "dismissed by agreement of the parties" and that it was a final order. The Agreed Order contains no explicit reference to the DOAH action or the default judgment.

¶ 7    Austin Gardens subsequently discovered the existence of the default judgment. On December 5, 2014, Austin Gardens filed a "motion to set-aside" the default judgment (motion to vacate). That motion asserted that Austin Gardens had not appeared in the DOAH action because it "thought this case had been taken care of" due to the circuit court action.

¶ 8    On December 19, 2014, an ALJ of the DOAH held a hearing on Austin Gardens' motion to vacate. At the hearing, Austin Gardens argued that it was impermissible for the City to initiate the DOAH action in 2013, while the circuit court action was pending for building code violations at the same property. The ALJ rejected Austin Gardens' argument and declined to disturb the default judgment, to the extent it was entered against Austin Gardens. However, the ALJ independently concluded that the individual members of the company should not be held personally liable for the fines assessed against Austin Gardens and thus decided to "dismiss"

the DOAH action with respect to those individuals. Accordingly, on December 19, 2014, the ALJ entered an order denying the motion to vacate that specified, "Default Judgment stands as to [Austin Gardens] LLC only. All other parties are dismissed."

¶ 9 On January 23, 2015, Austin Gardens filed a complaint in the circuit court of Cook County, pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)) for administrative review of the ALJ's denial of the motion to vacate the 2013 default judgment. The complaint contended that the City's "filing of an administrative action alleging code violations while a simultaneous action also alleging code violations was currently pending in the circuit court should be held to be void and without legal effect."

¶ 10 On October 24, 2016, the circuit court conducted a hearing. Austin Gardens argued that *res judicata* barred the City from maintaining duplicative actions in the circuit court and the DOAH, and that the 2014 Agreed Order resolving the circuit court action "extinguished the jurisdiction of" the DOAH. The circuit court rejected Austin Gardens' *res judicata* argument. However, the circuit court independently noted that, in reviewing the complaints from the two actions, it found "some duplication in that some of the exact same ordinances were cited in the administrative review [complaint] as w[ere] cited in the [circuit court] complaint." The circuit court indicated that the City could not maintain separate cases "on the very same ordinance." The circuit court concluded that the default judgment should be affirmed but reduced by $2000 so as to remove fines for violations that were alleged in the circuit court action. The circuit court's written order specified that the ALJ's decision denying the motion to vacate was "Affirmed except for those violations which were duplicative of those contained" in the circuit court action, resulting in a $2000 reduction of the amount of the default judgment.

¶ 11 On November 22, 2016, Austin Gardens filed a timely notice of appeal. Accordingly, we have jurisdiction.

¶ 12                                              ANALYSIS

¶ 13 On appeal, Austin Gardens argues that the ALJ erred in denying its motion to vacate the default judgment in the DOAH action because, as a matter of *res judicata*, the circuit court action barred the DOAH action. Austin Gardens claims that the requirements for *res judicata* were met because there was a final judgment on the merits in the circuit court action, the same parties were involved in both actions, and both cases "arose from the same set of operative facts—the condition of the Property." Austin Gardens contends that it is improper to allow the City to "litigate what is substantially the same claim in multiple forums, at the same time."

¶ 14 In response, the City's primary argument is that the DOAH lacked jurisdiction to vacate its 2013 default judgment because Austin Gardens' motion to vacate was untimely. The City relies upon section 2-14-108(a) of the Chicago Municipal Code (Code), which provides:

"An administrative law officer may set aside any order entered by default and set a new hearing date, *upon a petition filed within 21 days after the issuance of the order of default,* if the administrative law officer determines that the petitioner's failure to appear at the hearing was for good cause or, at any time, if the petitioner establishes that the petitioner was not provided with proper service of process. If the petition is granted, the administrative law officer shall proceed with a new hearing on the underlying matter as soon as practical." (Emphasis added.) Chicago Municipal Code § 2-14-108(a) (added Apr. 29, 1998).

The City argues that, since the motion to vacate the 2013 DOAH default judgment was not filed within 21 days (and because there is no claim of improper service in the DOAH action), the DOAH lacked jurisdiction to decide the motion to vacate. Alternatively, the City argues that, on the merits, the doctrine of *res judicata* is inapplicable.[1]

¶ 15     We first note that, on administrative review, this court "reviews the administrative agency's final decision, not the circuit court's decision. [Citations.]" *Sloper v. City of Chicago, Department of Administrative Hearings*, 2014 IL App (1st) 140712, ¶ 15. That is, we review the DOAH's decision on Austin Gardens' motion to vacate rather than the circuit court's decision upon administrative review.

¶ 16     Before we may reach the merits of the agency's decision, we address the City's threshold argument that the DOAH lacked jurisdiction to consider Austin Gardens' motion to vacate. See *Modrytzkji v. City of Chicago*, 2015 IL App (1st) 141874, ¶ 9 ("As a challenge to jurisdiction is a threshold matter we must address it first, before we can reach the substance" of the appeal.). "Whether an administrative agency has jurisdiction is a question of law that is reviewed *de novo*." *Id.*

¶ 17     We briefly note Austin Gardens' claim that the City waived this argument because "[t]he record is devoid of the City having challenged the timeliness of Austin Gardens' Motion to Vacate in front of the DOAH." We disagree. A challenge to an agency's jurisdiction "can be raised at any time," including on appeal. *Id.*; see also *Robinson v. Human Rights Comm'n*, 201 Ill. App. 3d 722, 726 (1990) ("A lack of jurisdiction may be raised at any time, either directly or collaterally."). Thus, we consider whether the DOAH had jurisdiction to consider Austin Gardens' motion to vacate.

¶ 18     "[A]n administrative agency has no inherent or common law power and may only act in accordance with the power conferred upon it by the legislature. *** Like a court of limited jurisdiction, an administrative agency can only act in conformity with the procedure set forth in the statute which empowers it. [Citation.]" *Robinson*, 201 Ill. App. 3d at 728. "Since an administrative agency *** is a creature of statute, its jurisdiction or authority must be found within the provisions of the statute by which it acts. [Citations.] Thus, parties seeking review of an agency decision must 'strictly comply' with the procedures set forth in the statute or ordinance. [Citation.]" *Modrytzkji*, 2015 IL App (1st) 141874, ¶ 10.

¶ 19     "The City [of Chicago] has the authority under its home rule powers to establish administrative agencies. Ill. Const. 1970, art. VII, § 6(a)." *Id.* ¶ 11. Pursuant to this power, the City created the DOAH "to conduct administrative adjudication proceedings for departments and agencies of the city." Chicago Municipal Code § 2-14-010 (amended Feb. 15, 2012). Section 2-14-150 of the Code specifies that the DOAH "shall operate a system of administrative adjudication of violations of building code provisions" within a buildings hearings division. Chicago Municipal Code § 2-14-150 (amended July 29, 1998). The director of the DOAH is empowered to appoint administrative law officers to conduct hearings, make findings of fact and conclusions of law, and "impose penalties and fines *** consistent with applicable code provisions." Chicago Municipal Code §§ 2-14-030 (amended Feb. 15, 2012), 2-14-040 (amended Apr. 29, 1998).

---

[1]The City's brief explicitly declines to challenge the portion of the circuit court's decision reducing the amount of the default judgment by $2000.

¶ 20    If a party accused of building code violations fails to appear at a properly noticed DOAH hearing, "the administrative law officer may find the recipient [of a notice of violation] in default and proceed with the hearing and accept evidence relevant to the existence of a code violation and conclude with a finding, decision, and order." Chicago Municipal Code § 2-14-078(a) (amended Apr. 29, 1998). "The recipient of a notice of violation or a notice of hearing who is found to be in default may petition the administrative law officer to set aside the order of default and set a new hearing date in accordance with Section 2-14-108." Chicago Municipal Code § 2-14-078(b) (amended Apr. 29, 1998). In turn, section 2-14-108 provides:

> "An administrative law officer may set aside any order entered by default and set a new hearing date, upon a petition filed within 21 days after the issuance of the order of default, if the administrative law officer determines that the petitioner's failure to appear at the hearing was for good cause or, at any time, if the petitioner establishes that the petitioner was not provided with proper service of process." Chicago Municipal Code § 2-14-108(a) (added Apr. 29, 1998).

¶ 21    "Illinois has consistently held that time limitations upon bringing actions before administrative agencies are matters of jurisdiction which cannot be tolled." (Internal quotation marks omitted.) *Modrytzkji*, 2015 IL App (1st) 141874, ¶ 13. Thus, in *Modrytzkji*, our court held that an analogous time limit in a Code provision was jurisdictional. In that case, the plaintiff requested a DOAH hearing to challenge determinations by the City's Commission on Animal Care and Control (Commission) that two of his dogs were "dangerous animals" under the Code. *Id.* ¶ 5. The DOAH held a hearing and affirmed the Commission's determinations. *Id.* ¶ 6. The circuit court then affirmed the DOAH decision. *Id.* ¶ 7.

¶ 22    On appeal to this court, the City argued that the DOAH lacked jurisdiction to conduct the hearing, as the plaintiff's request for DOAH review of the Commission's determinations was untimely. We agreed, relying on the Code provision that animal owners must be informed of the right to appeal Commission determinations " 'by filing a written request for a hearing within seven days of service of the notice.' " *Id.* ¶ 11 (quoting Chicago Municipal Code § 7-12-050(d) (added Oct. 2, 1995)). We reasoned:

> "[The ordinance] does not provide for written requests for hearings that are filed beyond seven days of the notice and there is nothing in the Chicago Municipal Code that authorizes the Department to conduct hearings when a request for a hearing is untimely. Because the Department only has limited statutory authority, its powers cannot be expanded beyond what is authorized by the Chicago Municipal Code." *Id.* ¶ 12.

We concluded that as "plaintiff's request for a hearing was untimely, the [DOAH] did not have authority" to review the Commission's determinations, and so the DOAH's decision was void. *Id.* ¶ 14. In turn, "the circuit court did not have the authority to consider the merits of plaintiff's appeal" but was "limited to reviewing the [DOAH]'s decision for whether the decision was void." *Id.* ¶ 15. Accordingly, we vacated both the judgment of the circuit court and the order of the DOAH. *Id.*

¶ 23    Austin Gardens' reply brief asserts that *Modrytzkji* is distinguishable from the instant case because "[t]he provision in *Modrytzkji* did not set a time for the DOAH to act as [section] 2-14-108(a) does. Instead, it set a requirement for the *party* to act." Austin Gardens is incorrect. The Code provisions at issue in *Modrytzkji* and in this case set limits on when parties must act in order to obtain review from the DOAH: the Code provision in *Modrytzkji* allowed

an animal owner seven days to seek review of the Commission's dangerous animal determinations and, in this case, section 2-14-108(a) of the Code required Austin Gardens to seek review of the default judgment entered against it within 21 days. Thus, our reasoning in *Modrytzkji* applies here.

¶ 24 Our conclusion that the 21-day limit in section 2-14-108(a) of the Code constitutes a limit on the DOAH's jurisdiction is also consistent with our discussion of that provision in *Stone Street Partners, LLC v. City of Chicago Department of Administrative Hearings*, 2014 IL App (1st) 123654, *aff'd in part and rev'd in part on other grounds*, 2017 IL 117720, which also concerned a property owner's attempt to vacate a DOAH judgment. In that case, fines for building violations were assessed against the plaintiff, Stone Street, following a 1999 hearing at which a nonattorney purported to represent Stone Street. *Id.* ¶¶ 3-4. In 2011, Stone Street moved to vacate the 1999 DOAH order, but an ALJ determined that the DOAH lacked jurisdiction to do so because "[t]he governing ordinance [section 2-14-108(a)] only allowed it to consider vacating default judgments within 21 days of their entry." *Id.* ¶ 5. Stone Street's circuit court complaint seeking administrative review was dismissed, and Stone Street appealed to our court. *Id.* ¶ 6.

¶ 25 On appeal, Stone Street argued that the DOAH was authorized to consider its motion to vacate the 1999 order, pursuant to section 2-14-108(a) of the Code. Our court recognized that because "an administrative agency is a creature of statute, any power or authority claimed by it must find its source within the provisions of the statute by which it is created." (Internal quotation marks omitted.) *Id.* ¶ 24. However, because the 1999 order at issue was not a "default" order, we held that section 2-14-108(a) did not apply and "the DOAH correctly determined it had no jurisdiction to consider Stone Street's motion to vacate." *Id.* ¶ 25.

¶ 26 *Stone Street* illustrates that the DOAH's jurisdiction is defined by the Code and that section 2-14-108(a) defines the DOAH's authority to review default judgments. In this case, there is no question that Austin Gardens did not file its motion to vacate the August 2013 default judgment until December 2014, well beyond the 21-day time limit in section 2-14-108(a). As the motion to vacate was too late, the DOAH lacked authority to consider it.

¶ 27 Austin Gardens' reply brief asserts that the 21-day time limit in section 2-14-108(a) did not affect the DOAH's jurisdiction because that provision is merely "directory" rather than "mandatory." Austin Gardens relies on *Cooper v. Department of Children & Family Services*, 234 Ill. App. 3d 474 (1992). In that case, the Department of Children and Family Services (DCFS) failed to hold a hearing within 30 days, as required by the Child Care Act of 1969 (Ill. Rev. Stat. 1989, ch. 23, ¶ 2219(a)), after the agency notified the owners of a daycare center that DCFS sought to revoke their license to operate. *Cooper*, 234 Ill. App. 3d at 481. The circuit court concluded that the failure to hold a timely hearing caused DCFS to lose jurisdiction. *Id.* On appeal, our court discussed whether the statutory 30-day time frame was "mandatory, thus leaving DCFS without jurisdiction" or "merely directory." *Id.* We concluded that the provision was only directory:

"Here, by allowing a mandatory interpretation of this provision ***, the persons whom the statute was intended to protect, children, will be adversely affected. *** Moreover, there is no negative language in the statute denying performance by DCFS for failure to comply with the statute. It appears that this provision is one that merely directs a manner of conduct for the guidance of the officials and specifies the time for

performance of an official duty. Thus, *** we hold this provision is directory." *Id.* at 483.

In turn, we held that DCFS did not lose jurisdiction by failing to hold the license revocation hearing within 30 days. *Id.*

¶ 28    Austin Gardens relies on *Cooper* to argue that section 2-14-108 of the Code is directory and does not impact DOAH's jurisdiction. This argument is without merit, as the distinction between "directory" and "mandatory" concerns provisions directing government officials, not limits upon parties. As explained by our supreme court:

"the law presumes that statutory language issuing a procedural command *to a government official* is directory rather than mandatory, meaning that the failure to comply with a particular procedural step will not have the effect of invalidating the governmental action to which the procedural requirement relates. That presumption can be overcome under either of two conditions: (1) when there is negative language prohibiting further action in the case of noncompliance or (2) when the right the provision is designed to protect would generally be injured under a directory reading." (Emphasis added.) *In re James W.*, 2014 IL 114483, ¶ 35.

¶ 29    This inquiry also applies to Code provisions governing acts by DOAH officials. *Sloper*, 2014 IL App (1st) 140712, ¶ 19 ("An ordinance including language that dictates a procedural command to a governmental official is presumed directory rather than mandatory, which means the failure to comply *** does not invalidate the governmental action to which the procedural requirement relates."). Thus, the DOAH's failure to act within a time period set forth by the Code will not cause the agency to lose jurisdiction if the Code provision is merely directory. See *id.* ¶ 20 (DOAH's failure to conduct vehicle impoundment hearing within 30 days of party's request, as required by section 2-14-132(2) of the Code, did not deprive DOAH of jurisdiction, as the ordinance was "directory rather than mandatory").

¶ 30    Although "[a]n ordinance *** that dictates a procedural command to a government official is presumed directory rather than mandatory" (*id.* ¶ 19), that principle is not relevant to the analysis in this case. The 21-day time limitation in section 2-14-108(a) is not a procedural directive to government officials, but it specifies when a *party* must act to obtain review of a default judgment. Thus, we reject Austin Gardens' argument that the provision is merely directory. Rather, consistent with the precedent discussed, it limits the DOAH's authority to act.

¶ 31    Because Austin Gardens did not move to vacate the default judgment within the 21-day limit set by the Code, the DOAH lacked jurisdiction to consider that motion, and its December 19, 2014, order is void. *Modrytzkji*, 2015 IL App (1st) 141874, ¶ 14. In turn, the circuit court should not have reached the merits of Austin Gardens' complaint for administrative review, but "was limited to reviewing the [DOAH's] decision for whether the decision was void." *Id.* ¶ 15 (citing *Kyles v. Maryville Academy*, 359 Ill. App. 3d 423, 432 (2005)).[2] Accordingly, the order of the DOAH denying the motion to vacate, as well as the judgment of the circuit court affirming that decision, must be vacated.

_____

[2]We note that the voidness of the DOAH's decision on the motion to vacate does not deprive our court of jurisdiction although "we are limited on review to considering whether the [DOAH] had authority to act." *Modrytzkji*, 2015 IL App (1st) 141874, ¶ 16.

¶ 32    For the foregoing reasons, the October 24, 2016, judgment of the circuit court of Cook County, as well as the December 19, 2014, order of the DOAH, are vacated.

¶ 33    Orders vacated.