B-G ASSOCIATES, INC., Plaintiff-Appellant, v. FAUSTINO GIRON *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—89—0345

Opinion filed January 16, 1990.

Jody Ann Lowenthal, of Chicago, for appellant.

No brief filed for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff B-G Associates, Inc., an Illinois corporation which provides services in heating, air conditioning, and ventilation, brought an action to recover damages for an alleged breach of contract against Faustino and Maria Giron (jointly, defendants). A default judgment entered for plaintiff and against defendants subsequently was vacated by the circuit court. From that order, plaintiff appeals and questions whether the circuit court had jurisdiction to vacate the default judgment. Defendants, the appellees in this appeal, have not filed a brief in response; nevertheless, this court elects to consider the appeal on

its merits. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

According to the first amended complaint, defendant Maria Giron (Maria) is the owner of a business known as Treo's Pizza, which is not a corporation; defendant Faustino Giron (Faustino) is the manager of and doing business as Treo's Pizza, and is an authorized agent of Maria; Faustino requested and was provided goods and services from plaintiff in the amount of $4,332.21; and, despite Faustino's repeated promises to pay, no payments were made, leaving an outstanding balance of $4,332.21.

The procedural history of the case is complex and must be set out in some detail. On December 15, 1987, the circuit court (1) found Maria in default, having failed to appear, answer, or otherwise plead; (2) entered judgment for plaintiff and against Maria for $4,332.21 plus costs; and (3) dismissed Faustino without prejudice, based on his answer to plaintiff's interrogatory that Maria was the "100%" owner of Treo's Pizza. Thereafter, the circuit court, on February 26, 1988, vacated the default judgment entered December 15, 1987, against Maria, and granted plaintiff leave to add Faustino as an additional party-defendant.

Plaintiff, on May 3, 1988, filed a motion pursuant to section 2—611 (Ill. Rev. Stat. 1987, ch. 110, par. 2—611) of the Code of Civil Procedure (Code), seeking sanctions against defendants. Plaintiff's motion alleged certain interrogatories regarding ownership of the restaurant were answered untruthfully by defendants. On July 5, 1988, plaintiff filed a second section 2—611 motion for sanctions against defendants and their attorney, J. William Stefan. This second request reiterated the grounds raised in the May 3 motion, and asserted the following additional reasons: defendants' answer to the amended complaint subsequently was contradicted by Stefan and defendants; spurious defenses were raised; and Stefan initiated various pretrial procedures, including an unwarranted motion for a protective order, with the sole intent to delay and hinder the case. Plaintiff also suggested that Stefan made no independent investigation of the facts he presented and verified in defendants' answers to both the complaint and amended complaint.

On August 16, 1988, the parties entered into an "agreed order," not signed by any party or attorney, which reflected the following: on or before November 16, 1988, Maria and Faustino agreed to pay plaintiff a total of $2,500, payable in three equal monthly installments; upon payment of the full $2,500, the cause and all pending motions would be dismissed; and the matter was set for status on December 6,

1988. Defendants at no time questioned the status of this order as "agreed."

On September 26, 1988, plaintiff filed a motion for judgment, asserting that defendants had not made any payments as of that date in violation of the August 16 order. Plaintiff's attorney certified that she served notice of the motion by mailing a copy to defendants' attorney through regular mail on September 26. The hearing on plaintiff's motion for judgment was held October 3, 1988, but neither defendants nor their attorney appeared. The circuit court ordered as follows: (1) the order of August 16, 1988, was vacated; (2) judgment was entered for plaintiff against both defendants in the amount of $4,332.21 plus costs; and (3) plaintiff's pending section 2—611 motions were set for hearing to be held December 6, 1988.

Eighteen days later, on October 21, 1988, pursuant to section 2—1301 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—1301), defendants brought a motion to vacate the October 3, 1988, default judgment, asserting that they were naturalized citizens of Mexican ancestry "and did not comprehend that payments were required on certain dates"; further, they were "ready, willing and able" to pay the $2,500 previously agreed to, in full by cashier's or certified check. The matter was set for hearing on October 31, 1988.

At the October 31 hearing, however, defendants' attorney again failed to appear. As a result, defendants' section 2—1301 motion to vacate was stricken with prejudice.

On October 31, 1988, defendants filed another section 2—1301 motion to vacate the default judgment, and set the matter for hearing on that same day. Thereafter, on November 3, 1988, according to a "revised" notice of motion, defendants filed yet another motion to vacate the default judgment, and set the matter for hearing on November 7, 1988. Defendants' second section 2—1301 motion, filed on November 7, asserted exactly the same grounds for vacatur of the default as did their previous section 2—1301 motion which was stricken with prejudice. The revised notice of motion filed November 3 suggests plaintiff was served notice by regular mail; however, the proof of service by mail was neither signed by the certifying attorney nor notarized. Plaintiff denies having been provided with notice of the November 7 hearing.

In any event, on November 7, neither plaintiff nor its attorney was present in court. The circuit court then vacated the default judgment entered against defendants on October 3, "based upon payment of the sum of $2,500 by defendant's [*sic*] to plaintiff." Further, the court dismissed with prejudice plaintiff's cause of action "and all

pending motions." According to plaintiff, no copy of this November 7 order was mailed or given to it or its attorney. The docket sheet further reflects that, on November 7, defendants left a check for $2,500 with the court clerk.

Plaintiff apparently did not learn of the November 7 proceedings until it appeared in court on December 6, 1988, for hearing on its section 2—611 motions (as scheduled in the October 3, 1988, order). In an order, the court acknowledged that no funds were tendered to plaintiff in payment of the October 3, 1988, judgment, and further, that no motion was pending on November 7, the "alleged motion having been stricken with prejudice"; it then set plaintiff's two section 2—611 motions for hearing on December 19, 1988. In response, defendants filed a motion to strike or dismiss the section 2—611 motions as untimely, asserting that the November 7, 1988, order dismissed with prejudice plaintiff's cause of action and all pending motions, and had become final since not vacated within 30 days.

After continuances, the matter was heard on January 4, 1989. The circuit court therein denied plaintiff's section 2—611 motions,[1] and made a finding pursuant to Illinois Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)). According to the docket sheet, however, a "check" was "given in open court" on that date. The order dated January 4, 1989, makes no mention of any acceptance or rejection by plaintiff of the check, nor does the court indicate whether it considered plaintiff's entire cause dismissed or some portion thereof still pending. Plaintiff appealed on February 3, 1989, and asks that the November 7, 1988, order vacating the judgment of October 3, 1988, be declared void for lack of jurisdiction of the circuit court.

■■ In deciphering the tangled procedural posture of this case, several principles are germane. According to section 2—1301(e) of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—1301(e)):

"The court may in its discretion, before final order or judgment, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable."

This section (formerly, Ill. Rev. Stat. 1979, ch. 110, par. 50(5)) contemplates only one such post-trial motion attacking a final order or judgment. (*Drafz v. Parke, Davis & Co.* (1980), 80 Ill. App. 3d 540, 542,

---

[1]According to plaintiff, it was not until the January 4, 1989, hearing that defense counsel first tendered to plaintiff the November 7, 1988, order and a check in the amount of $2,500. Apparently, the copy of the November 7 order and $2,500 check given to the clerk of the court on the 7th had been placed in an envelope and kept in a safe in the clerk's office, but never presented to plaintiff.

400 N.E.2d 515, *aff'd sub nom. Sears v. Sears* (1981), 85 Ill. 2d 253, 422 N.E.2d 610; *Rose v. Centralia Township High School District No. 200* (1978), 59 Ill. App. 3d 606, 607, 375 N.E.2d 1039.) The circuit courts, therefore, have no authority to hear successive post-judgment motions, even where each is filed within 30 days after denial of the previous motion (*Dulin, Thienpont, Potthast & Snyder, Ltd. v. Packaging Personified, Inc.* (1980), 89 Ill. App. 3d 647, 649, 411 N.E.2d 1173; *Drafz*, 80 Ill. App. 3d at 542; see also *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 418, 255 N.E.2d 900), or where both are filed within 30 days of the court's final judgment, but the second only after the first post-judgment motion was denied. See *Benet Realty Corp. v. Lisle Savings & Loan Association* (1988), 175 Ill. App. 3d 227, 529 N.E.2d 718.

The rationale underlying these decisions was expressed by our supreme court in *Sears v. Sears* (1981), 85 Ill. 2d 253, 259, 422 N.E.2d 610:

> "There is no provision in the [Code] or the supreme court rules which permits a losing litigant to return to the trial court indefinitely, hoping for a change of heart or a more sympathetic judge. Permitting successive post-judgment motions would tend to prolong the life of a lawsuit—at a time when the efficient administration of justice demands a reduction in the number of cases pending in trial courts—and would lend itself to harassment. There must be finality, a time when the case in the trial court is really over and the loser must appeal or give up. Successive post-judgment motions interfere with that policy. And justice is not served by permitting the losing party to string out his attack on a judgment over a period of months, one argument at a time, or to make the first motion a rehearsal for the real thing the next month."

In the instant case, a settlement between the parties was reflected in the August 16, 1988, order. At that point, the circuit court retained jurisdiction over the matter, as it did not dismiss the action as of that date and further set the case for a status hearing four months later. Upon the failure of an installment payment from defendants as provided by the order, the court, on October 3, pursuant to plaintiff's motion, entered judgment for plaintiff in the full amount of damages alleged in its amended complaint. This October 3 judgment was by default; defendants nor their attorney were present, despite notice. Further, plaintiff's two section 2—611 motions, which remained pending, were set for hearing.

On October 21, 18 days after the judgment entered against them,

defendants made a timely motion under section 2—1301 to vacate that default. Defendants, however, failed to appear at the hearing on this motion to vacate, which was stricken with prejudice on October 31.

Seven days later, defendants filed a second 2—1301 motion to vacate, asserting the identical grounds set forth in their previous motion. Except for the pendency of plaintiff's section 2—611 claims, this filing by defendants clearly would have constituted an improper successive post-judgment motion which the circuit court would have had no authority to hear. *Drafz*, 80 Ill. App. 3d 540.

■ Where a section 2—611 claim is timely filed, however, "no appeal may be taken from the underlying judgment absent a Rule 304(a) finding until the section 2—611 claim is resolved" (*Palmisano v. Connell* (1989), 179 Ill. App. 3d 1089, 1095, 534 N.E.2d 1243); section 2—611 claims are now considered part of the civil action giving rise to such claims (*Kousins v. Anderson* (1989), 180 Ill. App. 3d 827, 829, 536 N.E.2d 487). Section 2—611 provides, in part (Ill. Rev. Stat. 1987, ch. 110, par. 2—611):

> "All proceedings under this Section shall be within, and part of the civil action in which the pleading, motion or other paper *** has been filed, and no violation or alleged violation of this Section shall give rise to a separate cause of action, or another cause of action within the civil action in question, by, on behalf of or against any party to the civil action in question, and by, on behalf of or against any attorney *** involved in the civil action in question."

(See also new Illinois Supreme Court Rule 137, effective August 1, 1989.) Due to the pendency of plaintiff's section 2—611 motions, therefore, this matter did not become appealable until those motions were denied on January 4, 1989.

Under section 2—611 (and new Supreme Court Rule 137), the motions for sanctions are part of the same proceeding as the underlying cause of action; does this mean that an underlying judgment on the merits cannot be deemed final until all pending section 2—611 claims are adjudicated? Further, would the underlying judgment on the merits be subject to successive motions to vacate under section 2—1301 as long as the section 2—611 claims remained pending? Clearly, section 2—1301 contemplates only one post-trial motion attacking a *final* judgment filed within 30 days after entry thereof; would the same concerns attach where, as here, a judgment on the merits is made, but due to the pendency of section 2—611 claims, it is not considered appealable?

■ We believe that the interests of finality and of certainty and

ease of administration, as expressed by our supreme court in *Sears*, are applicable to the narrow facts of this case. Although the section 2—611 claims were part of the pending cause of action, the circuit court's consideration of the second, successive section 2—1301 motion to vacate the judgment on the underlying action must be deemed improper. Any other conclusion would allow a losing party to return to the court indefinitely to attack the underlying judgment via section 2—1301, as long as the section 2—611 motions remained pending. Such a potential result would lend itself to harassment and is untenable.

■ We hold that on October 31, 1988, when defendants' first post-judgment motion to vacate was stricken with prejudice, the October 3, 1988, default judgment for plaintiff became final, albeit not appealable in the absence of a Rule 304(a) finding. The circuit court thereafter was without jurisdiction to enter subsequent orders, such as that of November 7, 1988, relating to the merits of the underlying cause of action.

■ We also refuse to construe the second section 2—1301 motion to vacate as a section 2—1401 petition, which provides a procedure for relief from a final order or judgment after 30 days from the entry thereof. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401.) Because a section 2—1401 petition to vacate institutes a new matter, and is not a mere continuation of the original proceeding (*Manning v. Meier* (1983), 114 Ill. App. 3d 835, 840, 449 N.E.2d 560), it is not considered a "successive" post-trial motion over which the circuit court would lack jurisdiction. (See *Drafz*, 80 Ill. App. 3d at 543-44; see also *Deckard v. Joiner*, 44 Ill. 2d at 418-19.) Here, the second post-judgment motion was made on November 7, 35 days after entry of judgment for plaintiff on October 3; only if the requirements of section 2—1401 were satisfied by the second motion would the circuit court have had jurisdiction to reconsider its October 3 judgment.

■ Section 2—1401, however, contemplates the introduction of new or additional information that was not nor could have been included in the first motion. (*Deckard*, 44 Ill. 2d at 418-19; *Drafz*, 80 Ill. App. 3d at 543-44.) Here the allegations in defendants' second post-judgment motion simply duplicated *verbatim* those set forth in the first. The second post-judgment motion therefore did not comply with the requirements of section 2—1401, and defendants may not proceed thereunder.

Based on the foregoing, we conclude the circuit court lacked jurisdiction to consider defendants' second, successive post-judgment motion to vacate, despite the pendency of plaintiff's section 2—611 mo-

tions. As a result, the November 7, 1988, order must be reversed; the order of January 4, 1989, denying plaintiff's two section 2—611 motions, is affirmed.

Affirmed in part; reversed in part and remanded with directions to reinstate plaintiff's judgment of $4,332.21 plus costs.

DiVITO, P.J., and SCARIANO, J., concur.