2016 IL App (1st) 140367-U

FIFTH DIVISION
June 30, 2016

Nos. 1-14-0367 & 1-14-1473
(CONSOLIDATED)

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 1635 |
| | ) | |
| LAMONT BROWN, | ) | Honorable |
| | ) | Thomas Hennelly, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Gordon concurred in the judgment.

**O R D E R**

¶ 1     *Held:*  1) Defendant's appeal from the denial of his motion to reconsider and for leave to file an amended petition is dismissed for lack of jurisdiction; 2) circuit court's summary dismissal of his *pro se* postconviction petition affirmed over his contention that he set forth an arguable claim that his trial counsel was ineffective for failing to file a motion to suppress the clothing found in his residence.

¶ 2     Following a jury trial, defendant Lamont Brown was convicted of first-degree murder and sentenced to 81 years' imprisonment, which included a 25-year firearm-sentencing enhancement for personally discharging a firearm. After his conviction was affirmed on direct

appeal in *People v. Brown*, 2012 IL App (1st) 102536-U, defendant filed a *pro se* petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)), which the circuit court summarily dismissed. Defendant filed a timely notice of appeal within 30 days of the circuit court's order. Then, more than 30 days after the summary dismissal of his postconviction petition, defendant filed a combined motion to reconsider and for leave to file an amended petition, which the court denied. On a consolidated appeal from both judgments, defendant contends that his petition set forth an arguable claim that his trial counsel was ineffective for failing to file a motion to suppress the clothing recovered in his residence because his girlfriend would have testified she was coerced by the police into consenting to the search. We dismiss defendant's appeal in No. 1-14-1473 based on a lack of jurisdiction and affirm in appeal No. 1-14-0367.

¶ 3    The evidence at trial showed that at approximately 11 p.m. on December 16, 2005, Melody Hoskins, the victim in this case, and her friend, Donna Smith, arrived at a lounge near 71st Street and Michigan Avenue in Chicago. They left the lounge an hour later. While they were walking back to Hoskins' vehicle, which was parked across the street from the lounge, Smith was using her cell phone and heard gunshots. Smith then realized Hoskins had been shot, but did not see the shooter. After the police arrived, a police sergeant asked Smith who "Lamont Brown" was, and she replied "a guy from [Hoskins'] past."

¶ 4    At some time after midnight on December 17, 2005, Camillah Eagles and Russha Harris arrived at a carry-out restaurant near 71st Street and Michigan Avenue. After purchasing their food, Eagles said they exited the restaurant and began walking back to Harris' house. As they

1-14-0367 & 1-14-1473 cons.

were walking, Eagles observed defendant exit a red vehicle, walk toward Hoskins and shoot a firearm at her multiple times. Defendant then came toward Eagles and told her to "get the f*** away from here." She described defendant as wearing dark clothing, specifically a black outer coat with a hoody.

¶ 5    Harris recalled that after she and Eagles exited the restaurant, she saw defendant, who exited a red Honda Accord, and asked him if there used to be a cab stand nearby, but defendant did not know. Thereafter, defendant walked toward Hoskins, who had just exited the lounge, and shot a firearm at her multiple times. Defendant then came toward Harris and told her to "get the F out of here." He re-entered the Honda Accord and drove away. She described defendant as wearing dark clothing, specifically a black hoody and "maybe" an overcoat.

¶ 6    Sergeant Rodney Hill responded to a radio dispatch of shots fired in the area of 78 East 71 Street. When he arrived at the scene, he observed Hoskins lying on her back in the street bleeding and struggling to breathe. Hill asked Hoskins who had shot her, and she responded "Lamont shot me. Why did Lamont shoot me?" Hill asked Hoskins who Lamont was, and she told him "Lamont Brown." Chatavia Sykes, Hoskins' daughter, testified that defendant used to date Hoskins. Hoskins later died as a result of multiple gunshot wounds.

¶ 7    Days later, Eagles viewed a photo array and lineup, and she stated she identified defendant as the shooter in both. Detective Regina Scott, however, testified that Eagles did not select defendant out of the lineup, but rather selected a different individual. Harris viewed a photo array and a lineup, and she identified defendant as the shooter in the lineup, but did not identify defendant in the photo array.

¶ 8    Detective Darrell Shaw investigated the shooting and at the scene he observed three cartridge casings and one fired bullet. He stated the firearm evidence was subsequently recovered and inventoried. William Lee, who pled guilty to a federal firearm possession charge in exchange for his testimony in this case, testified that in April 2008, the police raided his residence. Inside, they recovered a firearm from a boot in his bedroom. Lee obtained the firearm from a friend of his, who had purchased the weapon in December 2005 from defendant. The parties stipulated that Officer Christopher Liakopoulos would testify he recovered a firearm from a boot inside Lee's closet and it contained a clip with eight live rounds. A forensic scientist with the Illinois State Police testified that he compared the three cartridge casings recovered from the scene of the crime against test ammunition fired from the recovered firearm. He concluded the three cartridge casings recovered from the scene were fired from the firearm.

¶ 9    The police eventually arrested defendant on the second floor of a residence on the 5500 block of South Princeton Avenue. Near the address, the police also found a maroon Honda Accord which was registered to Tracey Trisby. The police spoke to Trisby, who first orally consented, and then signed a document indicating her written consent to the police searching her residence, which was the same location where defendant had been arrested. During the search, the police recovered two black hooded sweatshirts and a black jacket on a couch in the living room, car keys which matched the nearby Honda Accord, and a wallet and papers belonging to defendant on a bedroom dresser. A forensic scientist at the Illinois State Police tested the clothing and determined the right cuff of one of the sweatshirts tested positive for gunshot residue.

1-14-0367 & 1-14-1473 cons.

¶ 10    The police also searched the Honda Accord for evidence and found three fingerprints in the interior of the vehicle, including one on the rear view mirror. A forensic scientist at the Illinois State Police compared them to defendant's fingerprints and determined there was a match to the fingerprint recovered on the rear view mirror.

¶ 11    The jury found defendant guilty of first-degree murder, including a finding that defendant personally discharged the firearm that caused the death of Hoskins. The circuit court sentenced defendant to 81 years' imprisonment, which included a 25-year firearm-sentencing enhancement for personally discharging the firearm.

¶ 12    On direct appeal, defendant argued that the prosecutor misstated the evidence during closing argument and his mittimus should be corrected. *Brown*, 2012 IL App (1st) 102536-U. This court affirmed defendant's conviction, but corrected the mittimus. *Id.*

¶ 13    On October 4, 2013, defendant filed the instant *pro se* postconviction petition, alleging in relevant part that his trial counsel was ineffective for failing to file a motion to suppress the evidence recovered in his residence. The petition stated that defendant told his trial counsel to investigate the circumstances and all facts surrounding the consent to search by his girlfriend, Trisby, and she "executed a consent against her will and coerced through illegal tactics." The petition asserted that defendant was unable to provide an affidavit from Trisby because of his "confinement in segregation" beginning in January 19, 2013 and continuing until February 20, 2014, which prevented him from using the telephone.

¶ 14    On December 27, 2013, the circuit court found the issues raised in the petition had been raised on appeal and therefore were *res judicata*. The court accordingly summarily dismissed the

1-14-0367 & 1-14-1473 cons.

petition as frivolous and patently without merit. Defendant filed a notice of appeal from the circuit court's summary dismissal on January 24, 2014 (appeal No. 1-14-0367).

¶ 15    On February 10, 2014, defendant filed in the circuit court a "Motion for Rehearing Post Conviction Petition Relief and Amended Petition." The document stated that defendant's trial counsel was ineffective for failing to investigate Trisby "as a defense to show that consent to search was involuntary and evidence should have been suppressed." Defendant attached an affidavit from Trisby, wherein she averred that the police took her to the police station and then coerced her into signing a consent to search her vehicle by threatening to keep her at the police station and put her in jail until she consented to the search. She then signed the consent to search without reading the document. When she returned to her residence, the police were already searching inside her residence. She concluded that "the Chicago Police pressured me where I couldnt [sic] think straight and I did not know at the time I had a right to refuse the consent to search or sign it."

¶ 16    On March 28, 2014, the circuit court construed the document as a motion for rehearing and a motion for leave to file an amended petition, and subsequently denied both as frivolous and patently without merit. Defendant filed a notice of appeal from the circuit court's denial on April 25, 2014 (appeal No. 1-14-1473). This court subsequently granted defendant's motion to consolidate both appeals, which now follow.

¶ 17    Initially, we must discuss a threshold issue concerning defendant's appeal No. 1-14-1473, that being the circuit court's jurisdiction to entertain his combined motion to reconsider and for

1-14-0367 & 1-14-1473 cons.

leave to file an amended petition. Defendant now concedes the circuit court lost jurisdiction when he filed the motion more than 30 days after the court dismissed his initial petition.

¶ 18   While a postconviction proceeding is civil in nature (*People v. English*, 2013 IL 112890, ¶ 14), postconviction appeals are governed by our supreme court's rules of criminal appeals. Ill. S. Ct. R. 651(d) (eff. Feb. 6, 2013). According to Illinois Supreme Court Rule 606(b) (eff. Dec. 11, 2014), a defendant must file a notice of appeal "within 30 days after the entry of the final judgment appealed from or if a motion directed against the judgment is timely filed, within 30 days after the entry of the order disposing of the motion." When a timely notice of appeal has been filed, "the jurisdiction of the appellate court 'attaches instanter and the lower court is thereafter deprived of jurisdiction.' " *People v. Perry*, 2014 IL App (1st) 122584, ¶ 13 (quoting *People v. Carter*, 91 Ill. App. 3d 635, 638 (1980)); see also *People v. Guzman*, 2014 IL App (3d) 090464, ¶ 39 *aff'd on other grounds*, 2015 IL 118749 ("When a notice of appeal has been filed, the trial court loses jurisdiction over the matter appealed.").

¶ 19   However, if a defendant files a timely postjudgment motion after filing a notice of appeal, the notice of appeal will have no effect. Ill. S. Ct. R. 606(b) (eff. Dec. 11, 2014). A defendant may file a motion to reconsider the summary dismissal of a postconviction petition. *People v. Blair*, 215 Ill. 2d 427, 451 (2005). To be timely, that motion must be filed within 30 days of the dismissal. *People v. Dominguez*, 366 Ill. App. 3d 468, 472 (2006).

¶ 20   Here, on December 27, 2013, the circuit court summarily dismissed defendant's petition. On January 24, 2014, defendant filed a timely notice of appeal from the petition, thus shifting jurisdiction over defendant's cause from the circuit court to this court. See *People v. Walker*, 395

1-14-0367 & 1-14-1473 cons.

Ill. App. 3d 860, 867 (2009). As defendant did not file a motion within 30 days of the circuit court's summary dismissal of his petition, there was no timely postjudgment motion to invalidate the notice of appeal. See Ill. S. Ct. R. 606(b) (eff. Dec. 11, 2014). Therefore, on February 10, 2014, when defendant filed his untimely combined motion in the circuit court, the court lacked jurisdiction to consider the motion. See *Guzman*, 2014 IL App (3d) 090464, ¶ 39.

¶ 21     When the circuit court lacks jurisdiction, this court's jurisdiction of the matter is also affected, as we are limited to only considering the issue of jurisdiction below and cannot consider the merits of the defendant's filings. See *Kyles v. Maryville Academy*, 359 Ill. App. 3d 423, 431-32 (2005). Having found the circuit court lacked jurisdiction to consider defendant's combined motion, we must dismiss his appeal (No. 1-14-1473) from the denial of that motion. *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143, 149-51 (1994).

¶ 22     Turning to the appeal from defendant's initial petition, we address his contention that his petition set forth an arguable claim that his trial counsel was ineffective for failing to file a motion to suppress the clothing found in his residence where Trisby would have testified she was coerced by the police into consenting to the search.

¶ 23     The Act provides a means by which a defendant may challenge his conviction or sentence for violations of his federal or state constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2012). At the first stage of the Act, the circuit court must determine whether the defendant's petition is "frivolous" or "patently without merit," and if it does, the court will dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2012). Encompassed within this standard is the doctrine of *res*

- 8 -

1-14-0367 & 1-14-1473 cons.

*judicata* (*Blair*, 215 Ill. 2d at 445), which bars consideration of issues that were raised and decided on direct appeal. *People v. Davis*, 2014 IL 115595, ¶ 13.

¶ 24     Although the circuit court found the petition's claims barred by *res judicata*, our review does not reveal that the petition's claim of ineffective assistance of trial counsel for failing to file a motion to suppress was raised and decided on direct appeal. Because we review a first-stage dismissal *de novo* (*People v. Allen*, 2015 IL 113135, ¶ 19) and review the circuit court's judgment, not its reasoning (*People v. Jones*, 399 Ill. App. 3d 341, 359 (2010)), the court's finding of *res judicata* does not preclude our substantive review of defendant's claim on appeal. In reviewing his petition, all well-pled facts are taken as true. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). If the petition "alleges sufficient facts to state the gist of a constitutional claim," it should survive first-stage proceedings. *Allen*, 2015 IL 113135, ¶ 24.

¶ 25     A claim of ineffective assistance of counsel is reviewed pursuant to the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Hodges*, 234 Ill. 2d 1, 17 (2009). At the first stage of the Act, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id.* In the context of prejudice for failing to file a motion to suppress, the petition must show the unargued motion to suppress would have arguably been meritorious and arguably, a reasonable probability exists that the outcome of the defendant's trial would have been different had the evidence been suppressed. See *People v. Henderson*, 2013 IL 114040, ¶ 15; *People v. Richardson*, 2015 IL App (1st) 113075, ¶¶ 17-18. If either prong of the *Strickland* test is not met, the claim fails. *Henderson*,

2013 IL 114040, ¶ 11. A reviewing court may proceed directly to the prejudice component of *Strickland* without first determining whether trial counsel's performance was deficient (*People v. Valladares*, 2013 IL App (1st) 112010, ¶ 70), which is how we proceed in the instant case.

¶ 26     After searching defendant's residence, the police recovered two black hooded sweatshirts and a black jacket, which matched the description of the shooter's clothing. Additionally, one of the sweatshirts tested positive for gunshot residue. Even without the clothes and gunshot residue evidence, defendant's guilt was overwhelmingly established and it is not arguable a reasonable probability exists that the outcome of his trial would have been different. Two eyewitnesses, Camillah Eagles and Russha Harris, observed defendant shoot the victim and identified him as the shooter. They had an excellent opportunity to identify defendant because he came up to them after the shooting and told them to leave. Sergeant Rodney Hill testified that when he spoke to Melody Hoskins right after the shooting, she identified defendant as her shooter. Ballistics evidence, along with the testimony of William Lee, connected defendant to the murder weapon. Lastly, defendant's fingerprint was found in Trisby's maroon Honda Accord, which was the make and model of the vehicle Harris observed defendant exit prior to the shooting and enter after the shooting. Therefore, defendant cannot demonstrate he was arguably prejudiced by trial counsel's failure to file the motion to suppress, and his postconviction claim of ineffective assistance of counsel fails.

¶ 27     Nevertheless, defendant argues that a note sent by the jury during deliberations demonstrates the weakness in the State's case and the jury's interest in defendant's theory that Lee or his friend was in possession of the firearm at the time of the shooting. In the note, the jury

1-14-0367 & 1-14-1473 cons.

asked: "Was there an exact date of when the gun in question was sold or purchased?" While we cannot know the exact reason for the jury's question, the inquiry does not necessarily indicate the jury was contemplating whether defendant had been misidentified as the shooter, and whether Lee or his friend was really the shooter. See *People v. Minniweather*, 301 Ill. App. 3d 574, 580 (1998) (stating a jury's "request to review evidence and [its] questions posed to the court during deliberations *** merely indicates that the jury took its job seriously and conscientiously worked to come to a just decision"). We will not speculate on the reason for the jury's note nor are we persuaded, based on the note, that the result of defendant's trial would have been any different had the clothing not been admitted into evidence at trial.

¶ 28    For the foregoing reasons, we affirm the circuit court of Cook County's summary dismissal of defendant's petition in appeal No. 1-14-0367 and dismiss appeal No. 1-14-1473 based on jurisdiction.

¶ 29    No. 1-14-0367, Affirmed.

¶ 30    No. 1-14-1473, Appeal dismissed.